No. 34,329

ANNA JOHNSON, *Appellant*, v. HENRY G. SCHRADER, ANNA SCHRADER et al., *Appellees*.

(95 P. 2d 273)

546

Opinion filed November 10, 1939.

*Ira C. Snyder, Roy A. Lathrop,* both of Manhattan, and *Carl S. Byers,* of Salina, for the appellant.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton* and *R. E. Haggart,* all of Salina, for the appellees.

The opinion of the court was delivered by

THIELE, J.: Plaintiff filed a pleading entitled "Motion and Amended Petition," seeking to have certain judgments vacated, set aside and held for naught. The demurrers of various defendants to this pleading were sustained, and the plaintiff appeals.

The appellant's motion and amended petition was filed in an action originally filed by her as plaintiff in which two certain judgments were rendered. The general basis of her claim for relief was that the judgments were procured by duress. Perhaps the issues involved may be better understood by a short recital of events which led up to the filing of the action in which the judgments were rendered.

One George Schrader, of Saline county, had a family consisting of his wife Caroline, his sons Henry and George H., and his daughter Anna Johnson, the present appellant. He was the owner of a large amount of real and personal property. On February 25, 1919, he made a will. On May 7, 1919, he and his wife executed a deed to the two sons, conveying all his real estate but reserving to himself and his wife a life estate therein. He died December 6, 1919, and thereafter Anna Johnson brought an action to set aside the will and the deed on account of want of capacity to make a will and because of undue influence. As a result of trial, judgment was rendered in her favor, and on appeal by the widow and sons the judg-

ment of the trial court was affirmed in this court on October 6, 1923. (See *Johnson v. Schrader,* 114 Kan. 341, 219 Pac. 269.)

On October 9, 1923, Anna Johnson commenced an action against her mother, Caroline Schrader, and brothers, George H. Schrader and Henry G. Schrader, to partition the lands owned by her father in his lifetime. Without detailing all that happened in that case, it must suffice to state that on March 16, 1925, a judgment was rendered in the cause. On May 15, 1925, plaintiff procured a modification to show that certain real estate claimed by her was not within the terms of the judgment. By a further order and judgment made May 29, 1925, the judgment of March 16, 1925, was vacated and set aside and it was adjudged that the mother and brothers were the owners of certain described real estate, and their title thereto was quieted. It is these two last-mentioned judgments which are the subject of attack. While the above action was pending and on October 26, 1923, Anna Johnson filed another action against her mother and two brothers seeking an accounting of the personal property of the father and for judgment for one-sixth of the amount thereof. After the issues were made up, by agreement of all parties on May 29, 1925, this action was dismissed with prejudice and at the cost of plaintiff.

Nothing further occurred until August 6, 1936, when Anna Johnson filed her petition in the real-estate partition action to have the judgments set aside. We need not notice that particular petition further. On June 27, 1938, she filed the motion and amended petition now under consideration. Henry G. Schrader, defendant in the action, died July 21, 1935, and on motion of the appellant, his heirs and the administrator of his estate were made parties defendant. Motions to strike, to separately state and number and to make more definite and certain were denied. A demurrer was then interposed and sustained, and that ruling gives rise to this appeal.

The motion and amended petition is long, consuming eighteen pages of the abstract. For our purposes it may be said it was charged that the two judgments are null, void and of no effect for reasons set out; that soon after the original petition in the action was filed, the defendants, realizing that plaintiff would secure a judgment against them, conspired to defeat her in securing such a judgment; that they conspired to injure her long before the filing of the petition, and in furtherance of the conspiracy made threats and performed acts of aggression against the welfare and lives of her

and her family for the purpose of intimidating her and depriving her of her free will and of subjecting her to the will of the conspirators. After stating that Henry G. Schrader was a large man, weighing 250 pounds, of great physical strength and possessed of a violent and ungovernable temper, and a quarrelsome, domineering, selfish and greedy nature; that George H. Schrader was a large and powerful man, and that her husband was a small man, possessed of a mild and peaceful nature and disposition, the petition alleged fourteen specific instances of claimed misconduct, principally by Henry G. Schrader, but with knowledge, consent and subsequent approval of other defendants, covering a period from December 16, 1918, to some indefinite time in 1924. Most of the threats alleged were of harm to the husband. Others against her personally may be summarized: She was accused of having a child so that it could inherit and Henry would see that it didn't; that the wives of Henry and George assaulted her with intent to commit an abortion, desisting only when they found she was not pregnant; that on December 6, 1919, the father died and Henry and George had procured his invalid will to be admitted to probate and themselves named executors and this worried her and convinced her that her property was being wrongfully taken from her. The amended petition also referred briefly to the suit to set aside the father's will and deed, the result in this court and that thereafter the conspirators became furious with anger and Henry had to be restrained and this information was communicated to her. The amended petition then further alleged that following the decision in the supreme court she supposed the campaign of intimidation, oppression, etc., would cease, but it was kept up and she lived in fear of bodily injury and possible death to herself and family, and while in such state she agreed to the terms of a contract of settlement of her father's property, to the judgments here attacked and to the judgment in the action for accounting of the personal property. That thereafter the threats continued, instances of November, 1925, and August, 1926, being detailed, and that she learned of the threats which "reinforced her state of terror which had continued at all times since about December 20, 1918"; that Henry G. Schrader died on July 21, 1935, and the main cause of the intimidation and duress having been removed, she was able in due time to prosecute the action. In another paragraph she alleged she was under duress for a long time before the making of the various settlements and until some months after the death of Henry G. Schrader; that in all of the matters in court her attorneys did not

know she was under duress; that she was afraid to and did not tell them. After offering to do equity she concluded with a prayer that the two particular judgments be vacated, set aside and held for naught, and that she be given equitable relief.

The defendants' demurrers raised the questions hereafter discussed. Before taking up specific questions, we note appellant's contention that portions of the record pertaining to the actions at law hereafter mentioned, and showing testimony received in those actions, are not properly before this court for consideration of the demurrer. Without elaboration, we may say that our consideration is limited to matters disclosed by the appellant's amended petition and motion to vacate the judgments attacked.

There is considerable difference of opinion between the parties as to the exact nature of the present proceedings, whether it was a motion to vacate a void judgment under G. S. 1935, 60-3009, or a petition to vacate a voidable judgment as provided in G. S. 1935, 30-3011, or a petition in the nature of an action seeking equitable relief. Without now determining which specific method appellant was seeking to follow, or whether she sought relief on any particular theory, it is to be borne in mind that this court said in *Publishing House v. Heyl,* 61 Kan. 634, 60 Pac. 317:

"The code provides how and when a judgment may be vacated and a new trial obtained, and the procedure therein prescribed must be followed." (Syl. ¶ 1.)

And see *Railroad Co. v. Werner,* 70 Kan. 190, 192, 78 Pac. 410; *Railway Co. v. Osburn,* 79 Kan. 348, 350, 100 Pac. 473; *Blair v. Blair,* 96 Kan. 757, 153 Pac. 544; *Home Owners' Loan Corp. v. Dalton,* 148 Kan. 580, 581, 83 P. 2d 624; and cases cited to the same effect.

Appellant first contends that the judgments were void, though the face of the record does not show the jurisdictional defect, but only suggests it. It is fruitless to discuss this proposition at length. The action out of which the judgments arose was instituted by the plaintiff to procure a partition of lands. The record shows that she filed her petition, the defendants filed their answers, and ultimately the judgments were rendered. That the district court of Saline county had jurisdiction of a cause of action to partition lands in that county cannot be doubted; that the parties to the action were properly before it is admitted by the record; that it had power to enter the judgments complained of is not denied. If so, the judg-

ments were voidable and not void. What was there on the face of the record to suggest a jurisdictional defect? The inference seems to be that because of claimed duress a fraud was committed. The difficulty from appellant's standpoint is that it was she who invoked the jurisdiction of the district court, not the defendants, whom she accuses of overwhelming her will by threats of violence. Whatever effect the alleged duress might otherwise have had, it is not claimed, indeed it could not well be, that she was compelled against her will to institute an action against the defendants to compel them to do some act which they would not voluntarily do. The extent of her claim is that because of the duress she agreed to the judgments.

If the judgments may not be vacated on the ground they are void, may they be vacated for any other reasons? By G. S. 1935, 60-3007, provision is made whereby the district court has power to vacate its judgments in nine specific instances. Of these, only two seem to have any application whatever. The fifth provides for relief for erroneous proceedings against a person of unsound mind where the condition of the party seeking relief does not appear in the record. Appellant makes no claim she was of unsound mind. The other only applicable one is the fourth, which reads:

"For fraud, practiced by the successful party, in obtaining the judgment or order."

Although we have cases holding that in applying the general statutes of limitation, fraud and duress are not the same, e. g., Bank v. Bay, 90 Kan. 506, 135 Pac. 584; if appellant is to have any relief under this section of the code, duress must be considered as the equivalent of fraud. The word "duress" is not used in the provisions of the code with reference to vacation of judgments. If duress as pleaded herein is not considered as a species of fraud, the code provides no relief. In order to obtain such relief it is necessary that the moving party file his petition asking appropriate relief and cause a summons to issue and be served. We may consider the pleading filed sufficient compliance. While the record makes no disclosure as to service of summons, the adverse parties answered. But still another provision of the code applies. Under G. S. 1935, 60-3008, it is provided that proceedings to vacate a judgment for fraud must be commenced within two years after the judgment was rendered. The petition was filed over ten years after the judgments involved were rendered, and considering duress as fraud, the bar of the particular statute of limitations has fallen. It would appear that under

*Blair v. Blair*, 96 Kan. 757, 764, 153 Pac. 544, to vacate any voidable judgment, whether for fraud or any other reason—here duress—the petition to vacate must be filed within some one of the periods of time set out in G. S. 1935, 60-3008.

Appellant contends, however, that her petition may be considered as one to invoke the common-law power of the court to vacate judgments obtained by fraud or collusion. Her argument seems to be predicated largely on certain quotations and excerpts from *Craig v. Craig*, 110 Kan. 13, 202 Pac. 594. That case involved the right of the supreme court to set aside its own judgment procured by the fraud of the appellant in the supreme court, and not in the district court. In determining that matter it was held the supreme court by virtue of its statutory rule-making power could make any necessary rule to meet the situation involved, and also that it had an inherent power, not dependent on legislation. Statements in that opinion must be read in connection with that holding. The matter of the effect of the above provisions of the code with reference to the power of a district court to vacate voidable judgments was not the issue and was not discussed. In *Leslie v. Manufacturing Co.*, 102 Kan. 159, 169 Pac. 193, the question involved was the right of plaintiff to bring an independent action in the district court to set aside a judgment rendered in a city court while he was a minor, it being held that such an action would lie. Many of the other cases mentioned treat of the power of the court to set aside a void judgment, examples being *Chambers v. Bridge Manufactory*, 16 Kan. 270, 275; *Hanson v. Wolcott*, 19 Kan. 207, 209. Reliance is also placed on a quotation from *List v. Jockheck*, 45 Kan. 748, 749, 27 Pac. 184. Reference to that opinion will show it was on rehearing of the same case wherein it was held that where a petition was filed to vacate a judgment and an order was made vacating it temporarily, an appeal would not lie (*id.*, 45 Kan. 349). The question of the right to bring a so-called common-law action, independent of the code to vacate a judgment procured by fraud, was not in issue in that case. But in what is said with respect to that right, it is recognized that it must be in proper time and form. The cases above reviewed are not controlling. It would appear that if the basis of appellant's petition is fraud and collusion she must follow the statutory provisions of the code, and if they are applied, waiving all other questions for the present, the petition was filed too late.

If it be assumed that duress in procuring a judgment is something

different from "fraud," as that term is used in the code of procedure, and that because there is no specific provision in the code with respect to duress the equitable powers of the court may be invoked, we are then confronted with the factual situation disclosed by the record. Although there is contention between the parties whether the acts alleged are legally sufficient to constitute duress, we shall assume for present purposes that duress is fully alleged. What does the record show? It shows that from a time in 1918 prior to the death of appellant's father, her mother and brothers embarked on a campaign of threats and intimidation to deprive her of her expectancy in her father's estate and after his death to prevent her receiving what she would have been entitled to had he made no will nor executed deeds to his sons. It is alleged that thereafter the threats continued and she was so overwhelmed that she was not able to exercise her own free will until some time after her brother's death in 1935. But during the very time she alleged she was being intimidated and browbeaten by her brothers, mother and others, and shortly after her father's death, she brought an action against them to contest the father's will and to set aside deeds he had made to her brothers. In that petition there were no allegations of duress against her. That she was not then intimidated is evident. The district court knew, as this court knows, that a trial of an action of that sort has many of the elements of a free-for-all fight. She won in the district court and successfully contested the appeal of her mother and brothers in this court. She certainly was not under duress then, for within four days after this court rendered its opinion in the suit above mentioned, she commenced an action to partition the real estate described in the deeds which she had successfully attacked. Not long after, she filed another action to force an accounting of the personal property of her deceased father and to recover her share. In neither of the petitions in these actions was there any allegation of duress. Later she seems to have settled those identical suits and it is the judgments in the first which she now seeks to have vacated. No one, court or otherwise, would be credulous enough to believe that because of duress she instituted any of the above actions. Rather, the conclusion must be that she brought them of her own free will and accord. She may not say she was under duress of the defendants when by her very acts she sought by prosecution of legal actions to appropriate to herself property which they would otherwise have had. To use a homely expression, she cannot blow hot and

cold at the same time. Notwithstanding her amended petition contains recital of many occurrences that might show duress upon her by the defendants, it likewise shows affirmative action on her part against them absolutely inconsistent with any such claim.

Considered on the theory that an attempt is made to state a cause of action in equity, or to invoke common-law powers of the court because the matters alleged do not come within the purview of the code of civil procedure, our view is that the amended petition discloses a situation wherein the petitioner is not entitled to the relief sought. By reason of our conclusions, it is not necessary that we discuss a number of other matters presented in the briefs.

The judgment of the lower court is affirmed.