No. 100,332

RURAL WATER DISTRICT #2, MIAMI COUNTY, KANSAS, *Appellant*,
v. THE CITY OF LOUISBURG, KANSAS, *Appellee*.
(207 P.3d 1055)

Opinion filed May 29, 2009.

*Carl W. Hartley,* of Carl W. Hartley, L.L.C., of Paola, argued the cause, and *Gary H. Hanson,* of Stumbo, Hanson, L.L.P., of Topeka, and *Todd A. Luckman,* of the same firm, were with him on the brief for appellant.

*Timothy P. Orrick,* of Foth & Orrick, L.L.P., of Overland Park, argued the cause, and *Jason B. Prier, Renee M. Gurney,* and *Anthony J. Orrick,* of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Rural Water District #2, Miami County, Kansas, appeals the district court's decision affirming an appraisers' award of $133,200 for territory annexed by the City of Louisburg. We discern five potential questions raised by this appeal: (1) Were the appraisers and the district judge required as a matter of law to consider or award going concern value in arriving at the award amount? (2) What was the appropriate procedure to be followed in a district court action to challenge an appraisers' award under K.S.A. 12-527? (3) What standard of review or standard of proof was to be applied in district court? (4) If the district judge employed the appropriate procedure and applied the correct standard of review or standard of proof under K.S.A. 12-527, was the process adequate to satisfy the Fifth Amendment? and (5) If the district judge employed the appropriate procedure and applied the correct standard of review or standard of proof, and the process was adequate to satisfy the Fifth Amendment, did the Water District carry

its burden of demonstrating that the appraisers' award amount was unreasonable?

### Factual and Procedural History

Rural Water District #2 (the Water District), established in the 1960s as a quasi-municipal corporation, serves approximately two-thirds of Miami County, or approximately 252,590 acres, including the land surrounding the City of Louisburg (the City).

The city, in 37 annexations, annexed approximately 1,900 acres of the Water District's service area. The annexed land included 22 meters serving customers and 500 linear feet of 2-inch service line.

After the annexations, the Water District filed a petition for mandamus and mandatory injunction in district court, seeking an order requiring the City to appoint a qualified appraiser and follow the process established in K.S.A. 12-527. K.S.A. 12-527 provides:

"(a) Whenever a city annexes land located within a rural water district . . . , the city shall negotiate with the district to acquire title to all facilities owned by the water district and used for the transportation or utilization of water distribution to the water district benefit units within the area annexed by the city. Title shall vest in or become the property of the city upon payment by the city to the water district of the reasonable value of such property, as agreed upon by the governing body of the city and the board of directors of the district. If the district is unable to reach agreement with the city on the reasonable value for such facilities, then the reasonable value shall be determined in the following manner:

(1) The district and the city shall each select one qualified appraiser and the two appraisers so selected shall then select a third appraiser for the purpose of conducting appraisals so as to determine reasonable value of the property, facilities and improvements of the district annexed by the city.

(2) The agreement or decision of at least two of the three appraisers shall be the fair market value presented to the city for payment and the district for acceptance.

(3) If either the district or the city is dissatisfied with the decision of the appraisers, then the district or the city may institute an action in the district court to challenge the reasonableness of the value determined by the appraisers."

After the Water District filed its petition, each party appointed an appraiser. Although the district judge ordered the parties' designated appraisers to select a third appraiser, it appears from the

district judge's ultimate written decision that he chose the third appraiser.

The district judge then instructed the panel of three appraisers on its role in arriving at a reasonable value for the annexed territory:

"1. 'Reasonable value' means the value of the property, facilities, and improvements as determined by you. Reasonable value is that amount in terms of money that such property, facilities and improvements are worth as you shall determine. Reasonable value means full compensation for everything or element of value taken, and that nothing less than such reasonable compensation can be legally awarded.

"2. In determining the compensation to be allowed, you must give consideration to all factors you determine that have bearing on the reasonable value. There is no factor excluded or mandatorily included. You may determine (1) whether or not any compensation is owed, and (2) if compensation is owed, what is the reasonable value thereof.

"3. In determining reasonable value, you should consider any element of value including the going concern value and the value of physical assets, but your consideration must not be speculative, conjectural, or remote.

"4. [The Water District] is entitled to full reasonable compensation for all property, facilities and improvements annexed."

The appraisers conducted a 2-day hearing, recorded by a court reporter, in which the parties provided extensive evidence supporting their positions. The Water District's expert witnesses valued the annexed territory at $8,490,000 and $12,895,898. The City's expert witness valued the territory at $65,200.

Two of the appraisers on the panel set the reasonable value for the Water District's award at $133,200; they did not explain how they arrived at this figure. The appraiser selected by the Water District dissented, stating: "[I]t is my opinion that the value computed by the other appraisers did not include all of the elements contemplated by [K.S.A. 12-527], the instructions to the appraisers, and . . . the evidence presented at the hearing." He opined that the two other appraisers erred by not awarding an amount for the potential value related to the right to serve annexed areas or the costs the Water District incurred in preparing to serve those areas. Further, he criticized the majority's valuation opinion for failing to include "at least a brief description of the rationale used and the items considered or not considered."

The Water District filed a petition in the district court to challenge the reasonableness of the award and argued that it was entitled to a trial de novo. In response, the City argued that no trial de novo was required and that the district court's standard of review should be merely whether there was substantial competent evidence in the record to support the award.

The district judge determined that the standard of review should be whether there was substantial competent evidence to support the appraisers' award. He then ordered that the parties submit only evidence already presented to the appraisers—either on the record or by reading the hearing transcript aloud. The district judge also placed the burden on the Water District to prove the appraisers' award was unreasonable, a feature of the procedure the Water District does not dispute. The district judge further stated that he would not adjust the appraisers' award unless he concluded it was so outside a "zone of reasonableness" that it was unlawful.

During the proceedings in district court, the City acknowledged that the appraisers should have considered the going concern value of Water District's property, facilities, and improvements. But it contended that the Water District erroneously expected to receive the value attached to an imagined right—including the present value of theoretical future customers, based on an incorrect population density calculation.

The district court affirmed the appraisers' $133,200 award, holding the Water District to a negative fact finding standard that demanded it demonstrate the appraisers' award was based on an arbitrary disregard of undisputed evidence or an extrinsic consideration such as bias, passion, or prejudice. Moreover, the district court discounted the precedential value of *City of DeSoto v. Consolidated Rural Water District No. 6*, 23 Kan. App. 2d 407, 930 P.2d 624, *rev. denied* 261 Kan. 1084 (1997), in which a panel of our Court of Appeals had remanded an appraisers' award for an evidentiary hearing and consideration of going concern value. The district court reasoned that neither *City of DeSoto* nor K.S.A. 12-527's legislative history required an award to include the value to be derived from future customers; such a value should be included in an award only if it would be reasonable to do so. Finally, the

district judge focused on the legislative history of a 1987 amendment to the statute, in particular, a letter written by legislator Robert Vancrum that suggested a specific valuation formula was deleted from the statute purposely, thus enabling appraisers to consider any element of value in setting an award.

The Water District appealed and filed a motion requesting this case be transferred to this court. Our court granted the motion.

### Going Concern Value

The question of whether the appraisers and the district judge were required as a matter of law to consider or award going concern value in arriving at an award requires analysis of K.S.A. 12-527. Our court's review of questions of statutory interpretation or construction is de novo. *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 204 P.3d 1156, 1158 (2009).

The most fundamental rule of statutory interpretation and construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). The court's first task is to determine "the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

"When a statute is plain and unambiguous, we must give effect to its express language, rather than determine what the law should or should not be. We will not speculate on the legislative intent and will not read the statute to add something not readily found in it. If the statute's language is clear, there is no need to resort to statutory construction." *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007).

"If, on the other hand, a plain reading of the text of a statute yields an ambiguity or a lack of clarity, statutory construction becomes appropriate. In such circumstances, a court must move outside the text of the provision at issue and examine other evidence of legislative intent, such as legislative history, or employ additional canons of statutory construction to [determine] the legislature's meaning." *Board of Leavenworth County Comm'rs v. Whitson*, 281 Kan. 678, 685, 132 P.3d 920 (2006).

Moreover, if constitutional interpretation of a statute is required, our court has held:

"A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. This court not only has the authority, but also the duty, to construe a statute in a manner that it is constitutional, if the same can be done within the apparent intent of the legislature in passing the statute. [Citation omitted.] However, we may not rewrite a clear and unambiguous statute to make it pass constitutional muster. [Citation omitted.]" *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629-30, 176 P.3d 938 (2008).

The plain language of K.S.A. 12-527 is nonspecific and internally variable. A city acquires "title to all facilities owned by the water district and used for the transportation or utilization of water distribution to the water district benefit units within the area annexed by the city," and it is required to pay a water district "the reasonable value of such property." If no agreement is reached on the "reasonable value for such facilities," then the "reasonable value" will be determined by the procedures set forth: (1) Three appraisers will conduct appraisals to determine the "reasonable value of the property, facilities and improvements of the district annexed by the city"; (2) the decision of at least two of the three appraisers "shall be the fair market value" to be paid; and, (3) if the parties disagree with the appraisers' award, the reasonableness of the "value" can be challenged in district court.

We conclude from these assorted formulations that K.S.A. 12-527 contemplates that the appraisers' and, possibly later, the district court's calculation of the reasonable value covers at least the value of facilities, property, and improvements. The statute makes no mention of going concern value.

Given the statute's silence on this precise point, we must look beyond its plain language to determine whether the concept was meant to have a role in the calculation as a component of the reasonable value of facilities, property, and improvements or as necessary additions to it.

Examining the legislative history of K.S.A. 12-527, we learn that the statute was originally enacted in 1968. At that time, the statute required an annexing city to pay the value of:

"[F]acilities used for the transportation or utilization of water belonging to the water district. . . . In addition to compensation for such physical facilities the city may pay to the water district an amount equal to that portion of outstanding

indebtedness of the district which is properly attributable to the portion of the water district annexed by the city." L. 1968, ch. 80, sec. 1.

The 1968 statute provided that the value of "such property" would be determined "as agreed by the governing body of the city and the board of directors of the district, or if such agreement is not made, then as determined by the city." If a city's unilaterally set value was disputed, the statute permitted a district to "bring an action in the district court to determine the reasonableness of the amount of compensation fixed and determined by any such city." K.S.A. 1968 Supp. 12-527(a).

The legislature amended K.S.A. 12-527 in 1986. While the initial description of the value to be paid remained the same, the legislature then described "reasonable value" and required consideration of certain bonded indebtedness:

"(b) Such compensation shall include an amount to reimburse the district for any bonded indebtedness of the district existing at the time the annexation ordinance took effect and attributable to the annexed area based on the following factors:

(1) The cost of the construction of the facilities within the annexed area in proportion to the construction costs for the entire district at the time of annexation;

(2) the number of benefit units connected to and served within the annexed area in proportion to the number of benefit units connected to and served by the entire district at the time of annexation; and

(3) the current revenue received from benefit units within the annexed area in proportion to the current revenue received from all benefit units of the entire district at the time of annexation." K.S.A. 1986 Supp. 12-527(b).

The 1986 version of the statute still provided in the first instance for an agreement between a city and a water district on value; failing that, for the city to set the value; and, in the event of a disagreement, for the water district to "bring an action" in district court to determine the reasonableness of the value set by the city. K.S.A. 1986 Supp. 12-527(a).

The next year, 1987, the legislature passed another amendment to K.S.A. 12-527. The governor, however, vetoed this amendment. The language the governor rejected shifted the power to set a value unilaterally from cities to water districts. It also listed specific "factors" to be among those included in "reasonable value":

"(1) An amount to reimburse the district for any bonded indebtedness of the district existing at the time of payment by the city and attributable to the annexed area based upon the ratio of the benefit units in the annexed area compared with the total benefit units served by the district; and

"(2) an amount to reimburse the district for all the facilities to be transferred to the city based upon the ratio of the benefit units in the annexed area compared with the total benefit units served by the district, applied to the original construction cost adjusted to the current construction value and depreciated at a straight line rate over a forty-year period. The depreciated reduction of value shall be applied for the actual number of years the system has been in service or 30 years whichever is the lesser of the time expended; and

"(3) an amount equal to the gross revenue loss for the immediate past one business year from those benefit units in the annexed area or the actual current benefit unit costs for those benefit units in the annexed area whichever is the greater." H.B. 2480

Ultimately in that session, the legislature passed and the governor signed a later bill amending K.S.A. 12-527 to its current format. This version omitted the language vetoed by the governor earlier that year and that portion of the language added in 1986 that had required consideration of certain bonded indebtedness and set forth the factors used to determine it. In support of this second effort at a 1987 amendment, Representative Vancrum wrote a letter to the House Energy Committee explaining the new language. Vancrum said that the amendment would force cities to pay for a water district's assets and customer base; would permit appraisers to consider any element of value; and would make the statute's language comparable to that used in K.S.A. 66-1,176, which requires "fair and reasonable compensation" when annexation affects retail electric suppliers.

In addition to the legislative history described above, case law may guide us to a decision in this case. Although K.S.A. 12-527 has rarely been the subject of litigation, the Court of Appeals addressed the meaning of its current language in *City of DeSoto*. In that case, DeSoto annexed land belonging to the largest existing customer of Consolidated Water District No. 6, arguing it should pay only for the value of the water district's physical facilities located on the land. The water district sought compensation for the going concern value of the land taken. Although both parties, following K.S.A. 12-527, had selected appraisers, DeSoto brought a declaratory judg-

ment action in district court to determine the correct method for arriving at a reasonable value under the statute. This action was brought before the appraisers had settled on an amount. *City of DeSoto*, 23 Kan. App. 2d at 408-09.

The district court initially declined to determine the correct statutory method, ordering the appraisers to determine the value under each of the parties' suggested methods. The appraisers valued the physical assets at $19,300 and the going concern value at $41,000. *City of DeSoto*, 23 Kan. App. 2d at 409. Without further hearing, the district court granted summary judgment to the water district in the amount of $41,000, holding:

" '[T]he term reasonable value used in K.S.A. 12-527 is an open ended term granting to the appraisers . . . the discretion to consider whatever evidence they deem to be relevant in determining the reasonable value of the property taken. . . . K.S.A. 12-527 does not limit the value of the property taken to the value of the physical property taken.' " *City of DeSoto*, 23 Kan. App. 2d at 409.

DeSoto appealed. Reviewing K.S.A. 12-527's language and legislative history, the Court of Appeals endorsed the district court's decision that going concern value should be considered in the setting of an award under the statute.

"[A]ppraisers should be instructed to take into consideration the going concern value of the facilities within an annexed area in determining fair market value. Such an approach recognizes and properly considers not only the physical assets taken by a city but also the going concern value, which a city receives and a water district loses. To interpret the statute as only providing for the physical value of the assets would financially damage a water district to the advantage of a city. We do not believe that the legislature intended such an unfair outcome." *City of DeSoto*, 23 Kan. App. 2d at 411.

Nevertheless, the Court of Appeals reversed and remanded the case for a district court evidentiary hearing, because the parties were never "given an opportunity . . . to challenge the reasonableness of the appraisal before the entry of summary judgment." *City of DeSoto*, 23 Kan. App. 2d at 411.

Based on the legislative choice evident in the current general wording of K.S.A. 12-527, as opposed to the specificity of its earlier iterations, and on the content of the Vancrum letter and on the common sense of the Court of Appeals' decision in *City of DeSoto*,

we hold that going concern value is a potential component of "reasonable value," as that term is used in K.S.A. 12-527. As a matter of law, under the open-ended statute, going concern value should be considered for inclusion in any appraisers' award and any district court's reconsideration of the same in district court.

In this case, however, this holding does not necessarily take the Water District where it wants to go. The record shows that the appraisers were instructed explicitly by the district judge to include going concern value in their calculus. It is obvious that the appraisers and the district court understood the possible importance of this element. Consistent with K.S.A. 12-527, the appraisers were free to decide whether going concern value was pertinent and, if so, the amount the evidence demanded be attributed to it as part of the reasonable value of the annexed territory. Any re-examination of the award in the district court was governed by the same legal standard.

Thus the Water District's complaint actually is not that the appraisers were prevented from considering or failed to consider going concern value, but, as the dissenting appraisers' comments made clear, that they did not place a high enough number next to that potential component of reasonable value. The trouble with this is the statute's undifferentiated, or, perhaps, egalitarian approach. No city and no water district is irrevocably bound to any particular component or any specific formula in the presentation of evidence or argument about "reasonable value" under K.S.A. 12-527. The appraisers in this case and in any similar water district annexation case may evaluate any and all factors bearing on "reasonable value." They may assign those factors any or no weight and any or no dollar amount, as compelled by the evidence and its persuasive force. There will be times when going concern value is enormously influential and a high-dollar component of reasonable value. At other times, going concern value will have little impact and may reasonably be set at zero. The statute allows for the entire continuum of outcomes; any point on that continuum may be selected.

*Procedure in District Court*

We now turn to the question of whether the district judge employed the appropriate procedure in the Water District's challenge to the appraisers' award under K.S.A. 12-527. This question also requires analysis of K.S.A. 12-527. Thus our standard of review is unlimited. *Higgins,* 288 Kan. at 361.

The Water District asserts that it was entitled to a full opportunity to trial de novo in the district court, including any necessary discovery and a completely new factfinding before its choice of a district judge or jury without any limitations arising from the earlier proceeding before the appraisers. It advances five arguments on this issue: (1) The original language of K.S.A. 12-527 permitted full judicial review; (2) the phrase "institute an action," as used in the current version of K.S.A. 12-527, indicates that a challenge to an appraisers' award is not an appeal but a new action eventually leading to trial; (3) *City of DeSoto* requires that a district court's review be de novo; (4) K.S.A. 12-527 is similar to K.S.A. 26-508 governing eminent domain, which requires de novo review of an award; and (5) K.S.A. 12-527 should not be compared to K.S.A. 77-607, which pertains to review of an agency adjudication, because agencies are required to make factual findings while appraisers are not.

In response, the City contends that the legislature did not use the phrase "de novo" in K.S.A. 12-527, although it has done so in other statutes. The City also argues that a district court should treat an appraisers' award like an agency decision.

The Water District's first argument—that the original language of the statute somehow compels trial de novo—is without merit.

First, we cannot imagine a situation in which we would be justified in ignoring updated and applicable language of a statute in favor of interpreting and applying conflicting language used in an earlier version of it. The constitutional doctrine of separation of powers and the prudential considerations of limited institutional competence command that we work with the content of a statute as it is, not as it was.

Second, K.S.A. 12-527(a)(3) has provided since 1987: "If either the district or the city is dissatisfied with the decision of the ap-

praisers, then the district or the city *may institute an action* in the district court." (Emphasis added.) The statute's 1968 and 1986 versions provided a city the power to establish the amount of compensation it would pay to a water district for annexed territory. These versions then provided that, if the water district disagreed with the city's amount, the district's "board of directors [*may*] *bring an action* in the district court to determine the reasonableness of the [amount of compensation] fixed and determined by any such city." (Emphasis added.) We see no distinction of meaning or function among the operative language "may bring an action" in 1968, "may bring an action" in 1986, and the current "may institute an action." That being said, we also are not persuaded that the Vancrum letter's casual reference to the district court proceeding as an "appeal" rather than a de novo review or a new trial dictates a ruling in favor of the City on this issue. In short, the legislative history of this particular statute gives us nothing particularly enlightening on the nature and extent of the procedure to be employed by the district court.

The Water District's second argument—that the phrase "institute an action" necessarily implicates an expansive trial de novo rather than a limited appeal—prompts us to look beyond this particular statute to other places where our legislature has employed the phrase. We see it fairly frequently. See K.S.A. 21-4012 ("the department of health and environment, or local department of health, may institute an action in any court of competent jurisdiction to enjoin repeated violations of this act"); K.S.A. 21-4017 (same); K.S.A. 40-3619 ("[t]he rehabilitator, upon an order for rehabilitation, within one year or such other longer time as applicable law may permit, may institute an action or proceeding on behalf of the insurer"); K.S.A. 40-3627 ("[t]he liquidator . . . may institute an action or proceeding on behalf of the estate); K.S.A. 44-806a ("[o]n complaint of the secretary of state that any labor organization has failed to make the filing required by said statutes, it shall be the duty of the county or district attorney, or the attorney general, to institute such action in the district court of Shawnee County, Kansas"); K.S.A. 55-215 ("[t]he holder of such lien shall within six months institute an action to foreclose and enforce the

lien in the manner now provided by law, or shall within six months institute an action in attachment or replevin"); K.S.A. 58-3064 ("the commission may institute an action in the district court of the county in which the person resided . . . for an injunction to enforce compliance with the act or rules and regulations"); K.S.A. 60-4115 ("the plaintiff's attorney may institute an action in the district court against any person"); K.S.A. 65-1828 ("[t]he board may institute such actions in the courts of competent jurisdiction as may appear necessary to enforce compliance with [sanitation standards]"); K.S.A. 79-2801 ("it shall be the duty of the county attorney or county counselor to institute an action in the district court, in the name of the board of county commissioners . . . by filing a petition with the clerk of the court"). In addition, this court has used the phrase "institute an action" when referring to a typical litigation eventually promising a full trial in the first instance in district court. See *Teepak, Inc. v. Learned*, 237 Kan. 320, 329, 699 P.2d 35 (1985) ("whether the action is barred by Teepak's failure to institute an action against Learned prior to the running of the statute of limitations relative to medical malpractice is rendered moot"); *Johnson v. Schrader*, 150 Kan. 545, Syl. ¶ 1, 95 P.2d 273 (1939) ("[w]here a party institutes an action in a district court of a particular county to partition lands within the county, and the defendants file their answers, and the court thereafter renders a judgment within its power, the judgment is void"); *Martin, Governor v. State ex rel. Hall*, 39 Kan. 576, Syl. ¶ 18 P. 472 (1888) ("[a]s a general proposition, a county attorney of one county cannot institute an action, in the nature of a public prosecution, in the name of the state, in another county [other] than his own").

Although this essentially "plain language" or "ordinary meaning" argument cuts in favor of the Water District, it is not fully and finally dispositive on the nature of the process in district court. In each of the other statutes and in each of the three cases cited above for comparison, no prior full adversary proceeding in another forum is contemplated before the commencement of a district court action. K.S.A. 12-527, in contrast, sets up an award process before a panel of appraisers that at least practically precedes, and may eliminate the theoretical or practical need for, any district court

involvement. Indeed, in this case, the proceedings before the appraisers amounted to a deluxe model. The appraisers heard direct and cross-examination of witnesses and legal argument. They were instructed by the district court on their task. A formal record was taken and transcribed. The Water District is correct that this unique procedural history, launched as it was by the City's initial refusal to follow the statutory appraisal procedure, does not control our analysis of the statute, which must govern generally in the future as well as resolve the dispute that arose between these parties in the past. Nevertheless, the existence of a more or less elaborate appraisal process makes interpretation of K.S.A. 12-527 more complex than it would be in a simple plain language or ordinary meaning case.

The Water District's third argument that *City of DeSoto* establishes its right to a trial de novo in the district court over reads that case. The design and scope of district court procedure were not at issue in *City of DeSoto*. The Court of Appeals' reversal and remand to district court for an evidentiary hearing on the issue of reasonableness may have suggested that evidence beyond the universe of material on which the appraisers had based their decision would be admitted in the hearing, but it did not place that issue beyond principled dispute.

Both the Water District's fourth argument and the City's response use statutory language governing eminent domain as a reference point. K.S.A. 2008 Supp. 26-508 on eminent domain procedure provides:

"(a) If the plaintiff, or any defendant, is dissatisfied with the award of the appraisers, such party, within 30 days after the filing of the appraisers' report, may appeal from the award by filing a written notice of appeal with the clerk of the district court. The appeal shall be deemed perfected upon the filing of the notice of appeal. In the event any parties shall perfect an appeal, copies of such notice of appeal shall be mailed to all parties affected by such appeal, within three days after the date of the perfection thereof. An appeal by the plaintiff or any defendant shall bring the issue of damages to all interests in the tract before the court for trial *de novo*. The appeal shall be docketed as a new civil action, the docket fee of a new court action shall be collected and the appeal shall be tried as any other civil action. The only issue to be determined therein shall be the compensation required by K.S.A. 26-513, and amendments thereto."

Unfortunately, review of the eminent domain statute for assistance in this case obscures rather than illuminates. The legislature enacted K.S.A. 26-508 in 1963, 5 years before it enacted K.S.A. 12-527. Although K.S.A. 26-508 has been amended several times since, it has consistently characterized the district court action initiated by the party unhappy with an appraiser's award as an "appeal." At the same time, it has explicitly specified that the district court shall conduct a "trial de novo." K.S.A. 12-527 simply uses neither term. The fact that the distinct language of K.S.A. 26-508 has been interpreted and applied one way or the other does not inevitably demand a similar or a different interpretation and application of K.S.A. 12-527.

Likewise, the statutory language governing review of agency decisions found in K.S.A. 77-606, *et seq.*, again compared by both the Water District and the City, is of limited utility. As the Water District points out, agency adjudications require findings of fact while appraisals under K.S.A. 12-527 do not. This distinction alone goes a long way toward explaining the legislature's explicitly narrow prescription for court review of agency adjudications, requiring them to be upheld if supported by substantial competent evidence in the record. See K.S.A. 77-621(c)(7). The legislature has not chosen to exercise similar control in K.S.A. 12-527.

Aside from the parties' arguments on appropriate district court procedure, we note that the district judge in this case relied in part on a comparison of K.S.A. 12-527 to K.S.A. 66-1,176, which codifies annexation procedures for retail electric suppliers, which Vancrum had mentioned. As with the eminent domain and administrative procedure statutes, however, there are marked differences between the language used in K.S.A. 12-527 and K.S.A. 66-1,176. K.S.A. 66-1,176 provides for fair and reasonable compensation to be paid to a terminated retail electric supplier. The amount is to be "mutually agreed upon" and shall be the sum of certain factors. See K.S.A. 66-1,176(c).

"In the event that the parties are unable to agree upon an amount of compensation to be paid . . . either party may *apply to the district court* having jurisdiction where any portion of the facilities are located, for determination of com-

pensation. Such determination shall be made by the court sitting without a jury." (Emphasis added.) K.S.A. 66-1,176(d).

Finally, our own research efforts have turned up no helpful law from our sister states. Iowa appears to be the only one of them with a statute somewhat similar to K.S.A. 12-527. See Iowa Code § 357A.21 (2000). But it provides for arbitration if a water district and city fail to agree on a fair price. Furthermore, like K.S.A. 12-527, Iowa Code § 357A.21 has rarely prompted litigation. The one case referencing it does not bear on the issue before us. See *Clay Regional Water v. City of Spirit Lake, Iowa*, 193 F. Supp. 2d 1129 (N.D. Iowa 2002) (staying litigation to determine water district and city boundaries until pending case in district court complete).

All of the above-referenced potential sources for guidance on the appropriate procedure to be employed by the district court under 12-527, standing alone and in combination, leave much to be desired. We conclude, however, that the legislature's use of the nonspecific "institute an action" language in K.S.A. 12-527 endows a party dissatisfied with an appraisers' award with the right to trial de novo in the district court on the issue of the reasonableness of the award. This trial de novo means the "action" instituted under the statute may include all of the conventional attributes of a civil lawsuit, *e.g.*, discovery, exchange of expert reports, the possibility of a jury. The party challenging an appraiser's award bears the burden of demonstrating it to be unreasonable.

In arriving at this decision, we rely on the admittedly imperfect analogs of other statutes using the "institute an action" language. We trust that, if we have misapprehended the legislature's intention in employing this phrase in this context, it will say so through prompt amendment of K.S.A. 12-527.

Because the Water District was not permitted a trial de novo in the district court when it challenged the appraisers' award in this case, we must reverse and remand for the appropriate procedure to be employed. We recognize the district judge's laudable sensitivity to the Water District's rights through his design and supervision of a Cadillac appraisal process between the warring parties before him but rule that it cannot be viewed as a substitute, even

in this single case, for what we view as required by the governing statute. The lack of clarity in that statute led directly to this result, despite the judge's substantial efforts to reach a balanced and just outcome.

## Standard of Review or Standard of Proof

Before leaving the subject of the expectations on remand, we must also address the standard of review or standard of proof to be applied in the district court.

The focus of the trial de novo to which we have held the Water District to be entitled is reasonable value. The district court was correct in stating that the appraisers' award should not be overturned and replaced unless it falls outside a "zone of reasonableness." He was not correct to the extent he determined that the appraisers' award must be upheld if supported by substantial competent evidence or that the Water District must overturn a negative factual finding, *i.e.*, show an arbitrary disregard of undisputed evidence or an extrinsic consideration such as bias, passion, or prejudice. Both the substantial competent evidence and the negative factual finding standards are appellate standards of review generally unsuitable for application as standards of proof in a trial de novo. See, *e.g.*, *State v. King*, 288 Kan. 333, 204 P.3d 585 (2009); *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 928, 157 P.3d 1109 (2007). Furthermore, to the extent the appraisers implicitly made any negative factual finding, they did so without discrimination between the Water District and the City. They adopted an amount somewhere between those advanced by the parties.

As mentioned, the Water District concedes that it bears the burden of proving the appraisers' award unreasonable, as it is the party challenging it. The district court factfinder, whether ultimately a judge or a jury, must decide whether the Water District has carried that burden by a preponderance of the evidence, and, if so, the correct reasonable value, based on all of the evidence presented in the district court proceeding.

## Fifth Amendment

The next potential issue in this appeal is constitutional adequacy. Because we have held that K.S.A. 12-527 requires that case to be reversed and remanded for employment of the procedure and application of the standard of proof set out above under K.S.A. 12-527, we need not examine whether the rejected procedure and standard met Fifth Amendment requirements. Assuming arguendo that the Fifth Amendment comes into play when a city annexes a territory served by a water district, we hold that the reasonable value contemplated by the statute is equivalent to just compensation under the federal Constitution. This holding is consistent with our obligation to resolve any doubts in favor of a statute's validity. See *Martin*, 285 Kan. 625, 629-30, 176 P.3d 938 (2008). In addition, our reading of the statute gives any party unhappy with an appraisers' award all of the process that could possibly be due to it.

## Discharge of Burden

Because of our reversal and remand, we do not reach the last potential issue on appeal: Whether the Water District carried its burden of demonstrating that the appraisers' award was unreasonable. The analysis above means the Water District will have another chance.

Reversed and remanded for further proceedings consistent with this opinion.

EDWARD E. BOUKER, District Judge, assigned.