(288 P.3d 151)
No. 106,375

STATE OF KANSAS, *Appellee*, v. KEVIN FROST, *Appellant*.

Opinion filed November 9, 2012.

*Matthew J. Edge*, of Kansas Appellate Defender Office, for appellant.

*Matt Maloney*, assistant district attorney, *David Lowden*, chief attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., GREEN, J., and LARSON, S.J.

GREEN, J.: Kevin Frost pleaded guilty to one count of aggravated indecent liberties with a child in violation of K.S.A. 2010 Supp. 21-3504(a)(3)(A). The trial court sentenced Frost to life imprisonment with a mandatory minimum term of 25 years (hard 25) under K.S.A. 2010 Supp. 21-4643(a)(1)(C). On direct appeal, Frost's principal argument is that his hard 25 life sentence constitutes cruel and unusual punishment under the United States Constitution. There is no merit in this contention. Accordingly, we affirm.

Frost entered a guilty plea to one count of aggravated indecent liberties with a child. The factual basis offered by the State at Frost's plea hearing stated the following:

"In Sedgwick County, Kansas, on or about July 19th of 2010, [Frost] unlawfully and intentionally engage[d] in lewd fondling or touching of a child who [was] under 14 years of age, this being a child 12 years of age, with the initials of SMG, or of the defendant by the child, done with the intent to arouse or satisfy the sexual desires of the child, [Frost] or both, and at the time of this incident [Frost] was 18 years of age or older."

Under this factual basis and after the trial court determined that Frost's plea was knowingly and voluntarily made, the trial court accepted his plea and found him guilty. The trial court then sentenced Frost to a hard 25 life sentence as required under K.S.A. 2010 Supp. 21-4643(a)(1)(C).

### Does Frost's Sentence Constitute Cruel or Unusual Punishment?

Frost contends that his sentence constitutes cruel and unusual punishment under the United States Constitution. A categorical proportionality challenge under the Eighth Amendment to the United States Constitution does not require a review of the trial court's factual findings. Instead, only questions of law are raised. Questions of law are subject to unlimited appellate review. See *State v. King*, 288 Kan. 333, 355, 204 P.3d 585 (2009); *State v. Martinez*, 288 Kan. 443, 449, 204 P.3d 601 (2009).

The Eighth Amendment to the United States Constitution prohibits inflicting cruel and unusual punishment. The Eighth Amendment has been made applicable to the states under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Robinson v. California*, 370 U.S. 660, 667, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962). An Eighth Amendment challenge to a term-of-years sentence as disproportionate falls under two general classifications: (1) challenges that argue the term of years is grossly disproportionate given all the circumstances in a particular case; and (2) challenges where the court implements the proportionality standard by certain categorical restrictions. *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *State v. Gomez*, 290 Kan. 858, Syl. ¶ 4, 235 P.3d 1203 (2010).

We first observe that Frost does not argue that his hard 25 life sentence violates § 9 of the Kansas Constitution Bill of Rights or that his sentence is unconstitutional under the first proportionality

classification recognized by federal law, *i.e.*, a case-specific proportionality challenge. Consequently, we will focus only on Frost's categorical proportionality challenge.

Frost argues that the second federal classification—a categorical proportionality challenge—leads to the conclusion that the hard 25 life sentence, as imposed on a certain class of offenders, is cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Specifically, Frost describes the classification of offenders as those who have committed offenses "against minors, involving sexual contact, as opposed to a sexual act or penetration." A statute is presumed constitutional, and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court has the authority and the duty to do so. *Rural Water District No. 2 v. City of Louisburg,* 288 Kan. 811, 817, 207 P.3d 1055 (2009) (civil); *State v. Laturner,* 289 Kan. 727, 735, 218 P.3d 23 (2009) (criminal).

Before we can reach the merits of Frost's argument, we first must determine this threshold question: Does this court have jurisdiction to reach Frost's constitutional argument?

The United States Supreme Court has not clarified if a categorical proportionality challenge is available to all criminal defendants. Historically, the categorical proportionality challenge was limited to death penalty cases. See *e.g., Kennedy v. Louisiana,* 554 U.S. 407, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2008) (capital punishment is impermissible for nonhomicide crimes against individuals); *Roper v. Simmons,* 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (categorical rules prohibiting the death penalty for defendants who committed their crimes before the age of 18); *Enmund v. Florida,* 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982); *Coker v. Georgia,* 433 U.S. 584, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977). Even so, the *Graham* majority applied the categorical analysis to a juvenile offender who was sentenced to life imprisonment without the possibility of parole for a nonhomicidal crime. *Graham,* 130 S. Ct. at 2034.

After *Graham,* our Supreme Court noted that it was not clear if the United States Supreme Court would apply *Graham*'s categor-

ical analysis in contexts other than death penalty cases and cases involving juvenile offenders sentenced to life imprisonment without the possibility of parole for nonhomicide crimes. See *State v. Gomez*, 290 Kan. 858, 865-66, 235 P.3d 1203 (2010). Since *Graham*, however, the United States Supreme Court has used the categorical proportionality analysis to find that mandatory life imprisonment without parole for offenders who committed homicide crimes as juveniles violates the Eighth Amendment's prohibition on "cruel and unusual punishments." *Miller v. Alabama*, 567 U.S. ____, 132 S. Ct. 2455, 2460, 183 L. Ed. 2d 407 (2012).

Moreover, other courts—including our Supreme Court—have applied *Graham* to categorical proportionality challenges involving issues besides the death penalty. See *State v. Mossman*, 294 Kan. 901, 281 P.3d 153 (2012) (applying *Graham* to a categorical proportionality challenge arguing that lifetime postrelease supervision for aggravated indecent liberties with a child conviction constituted cruel and unusual punishment); *State v. Cameron*, 294 Kan. 884, 281 P.3d 143 (2012) (same); *State v. Woodard*, 294 Kan. 717, 280 P.3d 203 (2012). Thus, we will address Frost's constitutional challenge.

Next, the threshold question is what should be the appropriate category to which the categorical proportionality analysis applies. In *Graham*, the United States Supreme Court indicated that its earlier decisions had considered two categorical subsets in the context of its death penalty cases: (1) the nature of the offense; and (2) the characteristics of the offender. As mentioned earlier, Frost describes the appropriate class of offenders as those who have committed offenses "against minors, involving sexual contact, as opposed to a sexual act or penetration." The State disagrees and argues that Frost "is essentially trying to apply the analysis set forth in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), to all offenders who are convicted of a specific sex offense rather than to a specific individual." In other words, the State argues that Frost tries to categorize a much too narrow and specific class of offenders.

Regarding the nature or classification of the crime, Frost's brief fails to cite to any examples or authority to support his position for

such a specific and narrow classification. Indeed, our Supreme Court consistently has held that when an appellant challenges a sentence as categorically disproportionate, the nature of the offense that applies to the analysis is the category reflecting the crime of conviction. *Mossman*, 294 Kan. at 827-29; *Cameron*, 294 Kan. at 897. Thus, the appropriate nature of offense here is Frost's crime of conviction—aggravated indecent liberties with a child.

The steps for a categorical proportionality challenge are outlined in *Graham* and read as follows:

"The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. *Roper, supra,* at 572, 125 S. Ct. 1183. Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' *Kennedy,* 554 U.S., at 421, the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. *Roper, supra,* at 572[, 125 S. Ct. 1183]." *Graham,* 130 S. Ct. at 2022.

Thus, our analysis begins with objective indicia of national consensus. "[T]he 'clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures.' " 130 S. Ct. at 2023. Frost maintains that there is a national consensus against life imprisonment for aggravated indecent liberties with a child convictions because only three other states— Idaho, Montana, and Utah—have statutes similar to Kansas' statute, *i.e.*, statutes that permit life imprisonment for crimes involving sexual contact as opposed to sexual penetration. See K.S.A. 2010 Supp. 21-4643(a)(1)(C); Idaho Code § 18-1508 (2004); Mont. Code Ann. § 45-5-502 (2012); Utah Code Ann. § 76-5-404.1 (2008).

While less than a handful of states have statutes similar to K.S.A. 2010 Supp. 21-4643, Frost's argument is flawed. " 'There are measures of consensus other than legislation.' [Citation omitted.]" *Graham,* 130 S. Ct. at 2023. In fact, "sentencing practices are an important part of the Court's inquiry into consensus." 130 S. Ct. at 2023. Here, Frost's argument that there is a national consensus against life imprisonment for this class of offenses is misplaced

because he fails to mention that the hard 25 life sentence is not out of proportion to sentences imposed in other states which have withstood cruel and unusual punishment challenges.

For instance, in *Adaway v. State*, 902 So. 2d 746 (Fla. 2005), the Florida Supreme Court upheld the constitutionality of a statute that mandated life imprisonment without the possibility of parole for persons convicted of a crime similar to aggravated indecent liberties with a child, *i.e.*, "capital sexual battery." In *Martin v. Commonwealth*, 493 S.W.2d 714 (Ky. 1973), the Kentucky Court of Appeals held that a 24-year-old's life imprisonment without parole conviction for rape did not constitute cruel and unusual punishment. The Montana Supreme Court made a finding similar to the *Martin* court when it held that a sentence of life imprisonment without the possibility of parole for the crime of sexual intercourse without consent did not constitute cruel and unusual punishment. See *State v. Thorp*, 356 Mont. 150, 231 P.3d 1096 (2010). In *State v. Alwinger*, 236 Or. App. 240, 236 P.3d 755 (2010), the Oregon Court of Appeals held that a mandatory 25-year prison term for a sexual offense against a child violated neither the United States nor the Oregon constitutional prohibitions against cruel and unusual punishment. Finally, the Iowa Supreme Court recently held that a sentence of life imprisonment without parole for a second offense of sexual abuse did not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *State v. Oliver*, 812 N.W.2d 636 (Iowa 2012).

While some of the cases described earlier involve sexual penetration of the victim, this line of cases still remains persuasive. Although Frost tries to narrow the category to offenses "against minors, involving sexual contact, as opposed to a sexual act or penetration," his argument fails because the appropriate category is his crime of conviction—aggravated indecent liberties with a child. If Frost wanted to argue that his sentence was unconstitutional based on either his individual characteristics or the Kansas Constitution Bill of Rights, then he could have done so. Frost, however, has not chosen to challenge the constitutionality of his sentence under either of these theories. Thus, Frost has failed to

show that there is a national consensus against life sentences for crimes involving aggravated indecent liberties with a child.

Moreover, the United States Supreme Court has held that a life sentence for even a nonviolent property crime can be constitutional. See *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003) (offender sentenced to 25 years to life for theft of a few golf clubs under California's three-strikes recidivist sentencing scheme did not violate Eighth Amendment); *Harmelin v. Michigan*, 501 U.S. 957, 962-64, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (first-time felony offender's sentence of life without possibility of parole for a conviction of cocaine possession did not violate Eighth Amendment). In addition, our Supreme Court has held that an offender's sentence of a minimum of 80 years to life for convictions of four counts of criminal indecent liberties with a child and three counts of aggravated criminal sodomy was not so oppressive as to amount to an abuse of discretion. *State v. Nunn*, 247 Kan. 576, Syl. ¶ 4, 802 P.2d 547 (1990). Finally, our Supreme Court recently addressed arguments substantially similar to Frost's cruel and unusual punishment argument raised here. See *Woodard*, 294 Kan. at 717. Although the *Woodard* court did not address a categorical proportionality challenge in its opinion, the *Woodard* court did find that Kansas' hard 25 life sentence under K.S.A. 2010 Supp. 21-4643(a)(1)(C) does not violate either the Kansas or United States Constitutions. 294 Kan. at 723. This line of cases and our Supreme Court precedent supports the conclusion that there is not a national consensus against hard 25 life sentences for offenders sentenced under K.S.A. 2010 Supp. 21-4643(a)(1)(C), and that these types of sentences are constitutional.

But "[c]ommunity consensus, while 'entitled to great weight,' is not itself determinative of whether a punishment is cruel and unusual." *Graham*, 130 S. Ct. at 2026. Indeed, the task of interpreting the Eighth Amendment to the United States Constitution remains a judicial responsibility. 130 S. Ct. at 2026. Thus, under the second step of a categorical proportionality challenge, this court must exercise independent judgment to determine whether the punishment in question violates the Constitution. 130 S. Ct. at 2022. "The judicial exercise of independent judgment requires consideration

of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." 130 S. Ct. at 2026. "In this inquiry the Court also considers whether the challenged sentencing practice serves legitimate penological goals," *i.e.*, retribution, deterrence, incapacitation, and rehabilitation. A sentence that lacks any legitimate penological justification is by its nature disproportionate to the offense. 130 S. Ct. at 2028. Even so, "[c]riminal punishment can have different goals, and choosing among them is within a legislature's discretion." 130 S. Ct. at 2028.

To support his argument, Frost maintains that the penological goals of retribution and deterrence are not met because his crime is less serious than homicide but is punished more severely. Specifically, Frost contends that the penological goal of retribution is not met because "[t]he sentencing practice in Kansas does not conform to the offender's personal culpability. The retribution is not proportional because the more severe level of life imprisonment is not being imposed on a convicted murderer. The case for retribution is not met." As for the penological goal of deterrence, Frost maintains that "the punishment is grossly disproportionate in light of any justification of protecting the public. It is disproportionate because serious crimes such as second degree murder only require thirty-six months postrelease."

Frost's argument is misplaced. When the legislature enacted Jessica's Law, which includes the hard 25 life sentence requirement, its intent was to protect children by removing perpetrators of sexual crimes against children from society. *State v. Spencer*, 291 Kan. 796, 823-24, 248 P.3d 256 (2011). The United States Supreme Court has noted that sex offenders represent a particularly severe threat to society and that they are more likely than any other category of offenders to reoffend after they are released from prison. *McKune v. Lile*, 536 U.S. 24, 32-33, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002). Accordingly, our Supreme Court has held that "the State therefore has a particularly compelling interest in using incarceration as a means of protecting its youth from sexual offenders." *Woodard*, 294 Kan. at 722.

Our Supreme Court recently rejected an argument substantially similar to Frost's contention that the hard 25 life sentence is unconstitutional because aggravated indecent liberties is less severe than homicide but punished more severely. See *Woodard*, 294 Kan. at 723-24. In particular, the *Woodard* court stated the following when it rejected the appellant's argument:

"This argument suffers from several flaws. In the first place, it assumes that murderers necessarily receive more lenient sentences in Kansas than violators of Jessica's Law. This is not the case. In fact, the Kansas Criminal Code sets out a list of transgressions that constitute capital murder, which is an off-grid offense. K.S.A. 21-3439. Capital murder is subject to punishment by death. K.S.A. 21-4624. The penalty for homicide in Kansas may thus be much more severe than the penalties under Jessica's Law. See K.S.A. 21-4638; K.S.A. 21-4643. The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment.

"Furthermore, as the State points out, Jessica's Law is not the only Kansas statute that provides for more severe penalties for nonhomicide crimes than for certain categories of homicide. Compare, *e.g.*, rape, K.S.A. 21-3502, and aggravated kidnapping, K.S.A. 21-3420, which are severity level 1 offenses, with reckless second-degree murder, K.S.A. 21-3402(b), which is a severity level 2 offense." 294 Kan. at 723-24.

The *Woodard* court's reasoning equally applies to the underlying facts here. Thus, Frost's argument concerning the difference in severity for aggravated indecent liberties with a child and second-degree murder lacks merit.

The third legitimate reason for imprisonment, incapacitation, also justifies the sentence in question here. "Recidivism is a serious risk to public safety, and so incapacitation is an important goal." *Graham*, 130 S. Ct. at 2029. As mentioned earlier, the United States Supreme Court has noted that sex offenders represent a particularly severe threat to society and that they are more likely than any other category of offenders to reoffend after they are released from prison. *McKune*, 536 U.S. at 32-33. Because of the high risk of recidivism for sex offenders, the hard 25 life sentence serves the penological goal of incapacitation.

The final penological goal, rehabilitation, is also justified by the hard 25 sentence under K.S.A. 2010 Supp. 21-4643(a)(1)(C). "The concept of rehabilitation is imprecise; and its utility and proper implementation are the subject of substantial, dynamic field of inquiry and dialogue." *Graham*, 130 S. Ct. at 2029. "It is for legislatures to determine what rehabilitative techniques are appropriate and effective." 130 S. Ct. at 2029. K.S.A. 21-4643(a)(1)(C) includes a mandatory term of life imprisonment with a mandatory minimum term of 25 years for offenders convicted of aggravated indecent liberties with a child. Nevertheless, K.S.A. 2010 Supp. 21-4643(a)(1)(C) does not include a provision stating that aggravated indecent liberties with a child offenders are not eligible for parole after they have served the mandatory minimum 25 years. While K.S.A. 2010 Supp. 21-4643(a)(1)(C) does not guarantee offenders' eventual freedom, it does not foreclose altogether their opportunity to obtain release from prison "based on demonstrated maturity and rehabilitation." *Graham*, 130 S. Ct. at 2030. Because K.S.A. 2010 Supp. 21-4643(a)(1)(C) does not state that aggravated indecent liberties with a child offenders shall be sentenced to life *without parole*, those offenders have the possibility of reentering the community, which would allow them to show that they have been rehabilitated since their conviction.

In sum, penological theory is adequate to justify the hard 25 life sentence under K.S.A. 2010 Supp. 21-4643(a)(1)(C) because the accepted penological goals of retribution, deterrence, incapacitation, and rehabilitation are met. Consequently, the hard 25 life sentence under K.S.A. 2010 Supp. 21-4643(a)(1)(C) does not constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

For the foregoing reasons, Frost's hard 25 life sentence under K.S.A. 2010 Supp. 21-4643(a)(1)(C) for his aggravated indecent liberties with a child conviction is not categorically disproportionate and, therefore, is not cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Accordingly, we affirm the trial court's decision.

Affirmed.