NOT DESIGNATED FOR PUBLICATION

No. 122,753

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFFREY D. RASKIE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed October 22, 2021. Affirmed.

*Brittany E. Lagemann*, of Olathe, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., CLINE, J., and BURGESS, S.J.

PER CURIAM: Jeffery D. Raskie appeals the trial court's summary denial of his K.S.A. 60-1507 motion, arguing that his claims of ineffective assistance of trial and appellate counsel required the trial court to hold an evidentiary hearing on his motion. Because we conclude that each of Raskie's complaints are unpersuasive, we affirm the trial court's summary denial of his K.S.A. 60-1507 motion.

FACTUAL AND PROCEDURAL BACKGROUND OF RASKIE'S CASE

In the direct appeal of his two aggravated indecent liberties with a child convictions, our Supreme Court summarized the factual and procedural background of Raskie's underlying criminal case as follows:

"In October 2000, Raskie married his wife, S.R., who had a 7-year-old daughter, C.R., from a previous relationship. Raskie adopted C.R. the following month. During the marriage, the couple had two more children together. Eventually, Raskie and S.R. began experiencing problems in their marriage, mostly related to finances, and in May 2006 the couple separated. By court order, the couple had a shared child-custody arrangement.

"On the afternoon of Valentine's Day 2007, which was a day the children were to be with Raskie for the evening and overnight, C.R. told a school counselor she was being sexually abused by Raskie. The counselor called S.R., who in turn called C.R. and said, 'I know that you don't like going to your dad's house. Can you please tell me what's going on?' At first C.R. was calm and indicated that she 'didn't want to go because he was mean to her. He made her do chores and things like that.' Then C.R. got more agitated and upset and said, 'And he shows me his penis.' S.R. made arrangements for C.R. to stay elsewhere that night.

"The next day, S.R. took C.R. to the Olathe Police Department, where they spoke with Detective Kenton Thompson. Thompson suggested taking C.R. to Sunflower House, Inc., a child abuse prevention center, for a physical examination and a forensic interview. S.R. took C.R. to Sunflower House on February 16, 2007, where C.R. was interviewed by a forensic interviewer outside the presence of her mother. Through video monitoring, Thompson observed the interview, in which C.R. indicated that Raskie exposed his genitals to her; showed her pornography; touched her on the breasts and vagina, both over and under her clothing; bent her over a bed and used his penis to penetrate her anus; touched her with vibrators externally on her vagina and anus; bought her lingerie, such as corsets and thong panties; and videotaped her while she showered. C.R. indicated this behavior started when her mother began taking college classes at night. According to C.R., the abuse continued even after her parents had separated. During C.R.'s physical examination, she complained of both physical and sexual abuse.

"At some point after the Sunflower House interview, Detective Thompson indicated to S.R. that C.R. had been sexually abused. Thereafter, S.R. took steps to modify the child-custody arrangement and eventually kept the children with her full time.

"Officers continued their investigation. Among other things, they monitored Raskie's computer contact with C.R. through C.R.'s account on Myspace, a social networking website, and the officers subpoenaed Myspace to get information on Raskie's account. Also, about a month after the Sunflower House interview, Thompson interviewed C.R., primarily to get information to use in obtaining a search warrant of Raskie's residence. C.R. described a plastic tub next to Raskie's bed, where he kept some vibrators. C.R. also described thong panties and a corset, which were kept in her bedroom dresser at Raskie's residence. In addition, C.R. directed the detective to the video camera in the headboard of Raskie's bed. And C.R. described a photograph she had seen at Raskie's residence, depicting a woman's breast pierced with a nipple ring.

"At trial, C.R., who was 15 years old at the time, testified against Raskie. She testified that Raskie started touching her inappropriately when she was around 10 years old. She indicated that every night her mom attended a class, Raskie would come into her room. The first time, C.R. was asleep in her bed when she awoke to find Raskie touching her vagina over her clothing. Over time, the touching progressed. Raskie touched C.R.'s breasts and vagina under the clothing. 'Then one day, he started using a vibrator' under the clothing. C.R. described a 'skinny purple' vibrator and a 'fat purple' one. She also described other vibrators, including a small 'gold' one, about which C.R. said, 'He tried giving it to me as a present.' C.R. testified about other presents from Raskie, including a 'glass vibrator,' a 'sucker that was in the shape of a penis,' thong panties, and corsets. C.R. said she asked for one of the corsets '[b]ecause my friends had them that they wore like under their clothes.' When asked if this was 'more like a fashion trend than a sexual thing,' C.R. said, 'Yes.' C.R. had another purple corset that she did not ask for. She testified that Raskie bought it for her from Victoria's Secret. She thought he gave it to her on Valentine's Day, but she was not sure.

"C.R. testified that on a regular basis Raskie would put his penis and testicles in her face. She testified about another incident where, after her parents had separated, she and Raskie were arguing and she 'got pushed over the bed.' Then, Raskie 'put his penis in [her] butt.' C.R. testified that it went inside her body and hurt her 'stomach and [her] butt.' Raskie stopped because she was elbowing him and fighting to get him off of her. C.R.

3

said this incident happened before her 13th birthday, but Raskie continued to touch C.R.'s vagina and to use a vibrator on her after she turned 13.

"C.R. also testified that she had to shower in Raskie's master bathroom because the 'hallway bathroom was broken.' One time she noticed a red light shining through the shower's glass door. C.R. got out of the shower, followed the light, and discovered a video camera on the headboard in the master bedroom. When C.R. looked at the recordings, she saw videos of herself naked in the shower. She erased the recordings, and Raskie got angry at her. After that, Raskie tried to hide the video camera under Styrofoam or 'pillows or something.' Sometimes the video camera was on the top shelf of the closet in the master bedroom. C.R. did not tell her mom about any of the sexual abuse because she did not want her mom to know about it and she did not think her mom would believe her.

"Raskie testified in his own defense. He generally denied sodomizing C.R. or touching her inappropriately. He also denied showing her pornography. Instead, Raskie said that C.R. showed him an explicit video of a father sexually abusing his daughter. According to Raskie, the situation with C.R. 'got out of control' after he and his wife separated, and C.R. 'wasn't doing anything that she was supposed to do, her chores or anything like that. She wasn't coming home from school. She wasn't doing her homework. She just let the bottom drop out.' Raskie admitted that he and his wife purchased vibrators, but he denied ever using them on C.R. or buying them for C.R. Raskie admitted buying thong panties for C.R. but said he purchased those because C.R. asked for them and he 'wanted her to feel good about herself.' As for the corsets, Raskie testified that C.R. mentioned that some of her friends were wearing them and that she would like to try them. He was checking his e-mail one day when a Victoria's Secret advertisement came up on the computer screen; C.R. asked him about it, so he clicked on the link and showed C.R. the website. During this computer browsing session, he purchased bras, panties, and a purple corset for C.R. Later, he also bought C.R. a black corset from another store because she did not like the purple one. Raskie indicated that the corsets were just a fashion statement.

"Raskie also testified that on one occasion he found C.R. masturbating with a vibrator and on another occasion he came home to find that C.R. had put lotions and vibrators on his bed. According to Raskie, C.R. told him that her friends at school had vibrators and she also told him that two of her friends had been sexually abused. Raskie denied hitting C.R., and while he admitted to having arguments with C.R. over telephone

4

usage, he denied ever attacking C.R. sexually during one of those arguments. Raskie also denied videotaping C.R. while she showered. He did not remember putting the video camera on the headboard of his bed. Raskie thought his estranged wife put C.R. up to making false allegations.

"The jury acquitted Raskie of one count of aggravated criminal sodomy but convicted him of two counts of aggravated indecent liberties in violation of K.S.A. 21-3504. Although both convictions were for the same crime, the potential penalties differed because one offense occurred before and the other after July 1, 2006, which was the effective date of K.S.A. 21-4643, commonly referred to as Jessica's Law. Jessica's Law increased the potential penalty for certain enumerated offenses, including aggravated indecent liberties with a child under 14 years of age in violation of K.S.A. 21-3504. The increased penalty applies if the offense was committed on or after the effective date of the law by a defendant who is 18 years of age or older. When applicable, Jessica's Law, as it applied at the time of Raskie's offense, requires that the defendant 'shall be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years' unless, for first-time offenders, substantial and compelling reasons justify a departure. K.S.A. 21-4643(a)(1), (d). Raskie's offense that occurred before the effective date of Jessica's Law was classified as a severity level 3 person felony.

"Raskie was sentenced to a hard 25 life sentence for the Jessica's Law off-grid offense and 61 months for the severity level 3 offense." *State v. Raskie*, 293 Kan. 906, 908-12, 269 P.3d 1268 (2012) (*Raskie I*).

In his direct appeal, Raskie argued that our Supreme Court should reverse his two aggravated indecent liberties with a child convictions for six reasons. But our Supreme Court rejected all of Raskie's arguments.

First, although Raskie argued that the trial "court erred in admitting evidence of certain molestation 'grooming' items—photographs, a vibrator, and a corset—that were not used by [him] or [C.R.] during the charged incidents," 293 Kan. at 907, our Supreme Court determined that any error relating to the admission of those grooming items was harmless beyond a reasonable doubt since Raskie's trial counsel objected to the admission of only a few grooming items:

"As to Raskie's relevancy objection, it was asserted as to only a small portion of related evidence. Raskie did not object when police photographs of the black and gold vibrator and the black corset were admitted into evidence. Nor did he object when a photocopy of the risqué photographs was admitted into evidence. Additionally, other vibrators and lingerie, including two purple vibrators, a purple corset, and three pairs of thong panties, were admitted without any objection. Consequently, even if we were to conclude that error occurred in admitting the objected-to exhibits, any harm from that error could not be separated from the harm caused by admitting the similar (and somewhat cumulative) evidence. We do not find the actual objects to be any more prejudicial than a photocopy or picture of the objects. In other words, if there was error in admitting these exhibits, there is no reasonable probability the potential error affected the outcome of the trial. Therefore, the admission of the evidence, even if we assume it was erroneous, was harmless. [Citation omitted.]" 293 Kan. at 913.

Second, our Supreme Court rejected Raskie's contention that "the prosecutor committed misconduct by presenting the 'grooming' evidence and making comments during closing argument about [his] lurid intent" for similar reasons. 293 Kan. at 907. It dismissed Raskie's contention that the prosecutor committed misconduct by telling the jury that he groomed C.R. despite lacking an expert witness' testimony that he engaged in grooming behavior since Raskie's trial counsel never made this argument below. 293 Kan. at 914. On the other hand, although it determined that the prosecutor committed misconduct when he implied that Raskie committed a crime when he bought C.R. erotic items, it concluded that the prosecutor's misconduct was harmless beyond a reasonable doubt because the prosecutor also explicitly told the jury that Raskie's erotic "purchases and gifts were not illegal" during closing arguments. 293 Kan. at 918. It found that by also making this correct statement of law, the prosecutor mitigated any harm stemming from his original misstatement of law. 293 Kan. at 918. Also, in addressing Raskie's claims of prosecutorial misconduct, our Supreme Court rejected Raskie's suggestion that the prosecutor somehow evaded the role of a psychological expert, holding that at his trial, "the prosecutor did not attempt to step into the role of a psychologist by connecting

the acts of purchasing and gifting the objects to the concept of grooming C.R. for sex." 293 Kan. at 918.

Third, although Raskie argued that the trial court erred in admitting evidence of his Myspace postings "because the State failed to lay a proper foundation and because this evidence constituted hearsay," our Supreme Court refused to consider this argument because it found that Raskie had not preserved it "for several reasons." 293 Kan. at 907, 919. Those reasons included (1) that his trial counsel never objected to the State's successful admission of his Myspace postings into evidence at his jury trial and (2) that his appellate counsel otherwise failed to adequately brief this issue on appeal. 293 Kan. at 919.

Fourth, our Supreme Court rejected Raskie's contention that the trial court erred by denying his motions for judgment of acquittal "'[d]ue to witness inconsistencies and lack of independent evidence.'" 293 Kan. at 919. Highly summarized, it determined that C.R.'s trial testimony supported his two aggravated indecent liberties with a child convictions. 293 Kan. at 919-21. It noted that "[m]ost of the inconsistencies [that Raskie] point[ed] to relate[d] only to the aggravated sodomy allegation, the offense of which [he] was acquitted." 293 Kan. at 920. Also, it found that Raskie's specific argument necessarily failed because it hinged on reweighing the jury's fact-findings against him contrary to the well-known rule prohibiting appellate courts from reweighing fact-findings and credibility determinations. 293 Kan. at 920.

Fifth, our Supreme Court rejected Raskie's contention that the trial court impermissibly shifted the burden of proof onto him by giving a jury instruction that mirrored PIK Crim. 3d 51.10 (penalty not to be considered by the jury). It explained that although Raskie argued otherwise, the disputed instruction did not impermissibly shift the burden of proof onto him simply because it told the jury that its only concern was to determine whether he was guilty or not guilty. It stressed that because the jury also

7

received an instruction clearly stating that the State carried the burden of proof beyond a reasonable doubt, "the instructions in [Raskie's] case were accurate statements of the law and did not shift the burden of proof to Raskie." 293 Kan. at 922.

Sixth, our Supreme Court rejected Raskie's argument that cumulative error required the reversal of his two aggravated indecent liberties with a child convictions. It explained that Raskie's cumulative error argument automatically failed because he had established just one error—prosecutorial misconduct—which was harmless. 293 Kan. at 922.

After our Supreme Court rejected Raskie's six arguments concerning why his two aggravated indecent liberties with a child convictions should be reversed, it considered his argument that the statutorily mandated hard 25 life sentence for his Jessica's Law off-grid offense constituted cruel or unusual punishment under section 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. Ultimately, our Supreme Court held that the trial court failed to adequately consider the three-factor test for determining whether a sentence's length constitutes cruel and unusual punishment as outlined in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), when raised by Raskie's trial counsel at Raskie's sentencing. 293 Kan. at 925-26.

Thus, although our Supreme Court affirmed his two aggravated indecent liberties with a child convictions, our Supreme Court vacated Raskie's hard 25 life sentence for his Jessica's Law off-grid offense. It then remanded Raskie's case to the trial court for resentencing with directions to consider Raskie's constitutional challenge to the imposition of a hard 25 life sentence for his Jessica's Law off-grid offense under the three *Freeman* factors. 293 Kan. at 926. Those three *Freeman* factors required the trial court to do the following when resentencing Raskie upon remand: (1) to consider the nature of Raskie's offense and Raskie's character "'with particular regard to the degree of danger [that Raskie posed] to society'"; (2) to compare the hard 25 life sentence at issue with

8

other punishments imposed in Kansas "'for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question[,] the challenged penalty is to that extent suspect'"; and (3) to compare the hard 25 life sentence at issue "'with punishments in other jurisdictions for the same offense.'" *Raskie I*, 293 Kan. at 925 (quoting *Freeman*, 223 Kan. at 367).

Upon remand for resentencing in October 2012, Raskie was represented by new counsel. In fact, although it is unclear when Raskie's trial counsel died, it is undisputed that his trial counsel died sometime after our Supreme Court affirmed his aggravated indecent liberties with a child convictions in his direct appeal.

In any case, as explained by us in Raskie's appeal following his resentencing, the trial court eventually reimposed a hard 25 life sentence upon Raskie for his Jessica's Law off-grid offense:

> "Raskie was resentenced on October 11, 2012. The judge who presided over the resentencing hearing was the same judge who presided over Raskie's trial and original sentencing. During the hearing, defense counsel argued that the crimes Raskie was convicted of committing were not violent compared to the sodomy charge of which he was acquitted. Raskie argued that there was no penetration involved in the crimes of conviction, that he had no prior sexual convictions, and that he had a criminal history score of I. Raskie emphasized that he was 48 years old and that a hard 25 sentence would be a life sentence for him. The defense also presented an evaluation by Dr. Barnett, who opined that Raskie would be amenable to sex offender treatment and that he was not a pedophile or a sexual predator. Dr. Barnett's report is not included in the record on appeal. Finally, Raskie's counsel compared the hard 25 sentence with other sentences under Kansas law and the law of other states for serious crimes.
> "The State opposed Raskie's arguments. The prosecutor argued that Raskie molested his adopted daughter—a violation of a fiduciary relationship. The State also emphasized that according to C.R., the molestation started when she was 10 years old. Additionally, the State noted that this was not a one-time incident; C.R. testified the

activities took place over a 3-year period. Finally, the State argued that it was the legislature's prerogative to prescribe punishments and that the legislature had recognized the long-term impact on the victims of such offenses.

"After hearing these arguments, the [trial] court rejected Raskie's constitutional challenge. The [trial] court found that Raskie's crimes were egregious because the victim was his daughter and Raskie breached fiduciary obligations he owed to her. The [trial] court also found that Raskie's conduct was 'long-standing molestation.' The [trial] court also considered the sentencing for other crimes and the nature of sentencing in other states. The [trial] court found the hard 25 sentence established by the legislature was appropriate. In rejecting the constitutional argument, the [trial] court adopted and incorporated the State's trial brief as its findings.

"The parties then addressed Raskie's motion for a departure sentence. The defense requested either a dispositional departure to probation or a durational departure to the sentence in the 3-I nondrug grid box. Again, counsel cited to Raskie's minimal criminal history, his steady employment over the years as a machinist, and his productive life prior to his divorce and C.R.'s allegations. Raskie had the support of his parents, siblings, and other family members. Finally, counsel noted that under the current version of Jessica's Law, Raskie would be subject to lifetime postrelease supervision, offender registration, and electronic monitoring; thus, any community safety issues would be minimal. Counsel reiterated Dr. Barnett's report that Raskie was amenable to treatment.

"In response to the departure motion, the State read a letter from C.R. describing the impact of the crimes on her. C.R.'s mother also testified about the impact of the crimes on C.R. and herself, and Raskie's other children. The State also challenged Dr. Barnett's assessment, which was based solely on an interview with Raskie, who denied committing any crimes. The prosecutor also reiterated the [trial] court's earlier comments that the evidence established a 3-year systematic molestation of C.R. starting when she was 10 years old.

"After considering the testimony and hearing the arguments, the [trial] court found no substantial and compelling reasons to grant a departure. Accordingly, the [trial] court imposed a hard 25 life sentence for Raskie's conviction of the off-grid crime and a consecutive sentence of 61 months' imprisonment for the pre-Jessica's law offense." *State v. Raskie*, No. 108,914, 2013 WL 5737355, at *2-3 (Kan. App. 2013) (unpublished opinion) (*Raskie II*).

10

Raskie appealed the trial court's reimposition of a hard 25 life sentence upon him for his Jessica's Law off-grid offense, alleging that the trial court committed three errors at his resentencing.

In his first argument, Raskie once again asserted that the trial court failed to adequately consider his constitutional challenge to the hard 25 life sentence under the *Freeman* factors. 2013 WL 5737355, at *4. We rejected Raskie's renewed argument concluding the trial court's *Freeman* factors analysis at his resentencing was adequate:

> "As for the first factor, Raskie again cites his minimal criminal history and lack of prior sex crimes, Dr. Barnett's evaluation, and his amenability to treatment. Raskie's arguments are substantially similar to those raised in *State v. Rogers*, 297 Kan. 83, 298 P.3d 325 (2013). In *Rogers*, the defendant cited his lack of criminal history as a critical factor, his mature age (46 years), the lack of violence with his crime, and the fact he was accused of a single count rather than a long-standing history of abuse. *Rogers*, 297 Kan. at 89, 91. The Supreme Court upheld the [trial] court's finding that the defendant was a danger to society because of his willingness to commit a sexually violent crime against a 7-year-old. *Rogers*, 297 Kan. at 91; see also [*State v.*] *Spear*, 297 Kan. [780,] 800-01[, 304 P.3d 1246 (2013)] (rejecting arguments that the 'nonviolent' nature of an aggravated indecent liberties conviction weighed the first *Freeman* factor in favor of a defendant, especially when the defendant was in a fiduciary relationship with the victim).
>
> "Here, there is substantial evidence to support the [trial] court's findings that the first *Freeman* factor did not weigh in Raskie's favor. Although he was convicted of the lewd fondling of a child under 14, as opposed to aggravated criminal sodomy, the conduct occurred over a period of several years. C.R., who was Raskie's adopted daughter, was 10 years old when the conduct began. C.R.'s mother testified as to the devastating effects of Raskie's actions on C.R. and the rest of the family. Although Raskie presented a report from Dr. Barnett, the [trial] court apparently gave it little weight. Because Dr. Barnett's report is not included in the record on appeal, this court is in no position to question the [trial] court's assessment of this evidence.
>
> "As for the second and third *Freeman* factors, the Kansas Supreme Court recently rejected arguments that Jessica's Law is disproportionate as compared to

11

sentences imposed in Kansas for more serious offenses and as compared to sentences imposed in other jurisdictions for similar offenses. See *State v. Conrad*, 297 Kan. 76, 80-81, 298 P.3d 320 (2013) (hard 25 sentence for convictions of three counts of aggravated indecent liberties); *State v. Newcomb*, 296 Kan. 1012, 298 P.3d 285 (2013) (hard 25 sentences for rape and aggravated indecent liberties); *State v. Woodard*, 294 Kan. 717, 723-25, 280 P.3d 203 (2012) (hard 25 sentences for convictions of three counts of aggravated indecent liberties). This court also has rejected constitutional challenges to the hard 25-sentence in cases involving convictions of aggravated indecent liberties. See *State v. Frost*, 48 Kan. App. 2d 332, 288 P.3d 151 (2012), *rev. denied* October 1, 2013; *State v. Meili*, No. 107,041, 2013 WL 452135, at *2-3 (Kan. App. 2013) (unpublished opinion) (hard 25 sentence on two counts of aggravated indecent liberties involving stepdaughter).

"Thus, there is substantial evidence to support the [trial] court's factual findings, and we agree with the [trial] court's ultimate legal conclusion that K.S.A. 21-4643 is constitutional under the *Freeman* standards. Accordingly, the [trial] court did not err in denying Raskie's motion to declare K.S.A. 21-4643 unconstitutional." 2013 WL 5737355, at *4-5.


In his second argument, Raskie asserted that his minimal criminal history, his excellent employment record, his support from his family, and the finding by Dr. Barnett that he was neither a pedophile nor a sexual predator constituted substantial and compelling reasons that required the trial court to grant his departure motion. 2013 WL 5737355, at *5. Nevertheless, we rejected Raskie's argument finding our Supreme Court had consistently upheld the trial court's denial of departure motions in similar cases where relatively young defendants who committed sex crimes against children alleged that they posed no threat to the community. 2013 WL 5737355, at *6. We adopted our Supreme Court's reasoning from such cases, holding the trial court's denial of Raskie's departure motion was proper because although a defendant's "lack of a criminal history may be a mitigating factor, a continuing course of abuse of a family member over a period of time can outweigh that factor." 2013 WL 5737355, at *6.

12

In his third argument, Raskie asserted that the trial court "violated his constitutional rights and the United States Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007), when it sentenced him to the aggravated sentence in the applicable grid box for the pre-Jessica's Law conviction." 2013 WL 5737355, at *6. But we ruled that Raskie's argument was meritless because in *State v. Johnson*, 286 Kan. 824, Syl. ¶ 5, 190 P.3d 207 (2008), our Supreme Court held that any presumptive sentence under the revised Kansas Sentencing Guidelines Act does not violate either the United States Supreme Court's holding in *Apprendi* or *Cunningham*. 2013 WL 5737355, at *6.

Next, after we affirmed the trial court's reimposition of a hard 25 life sentence upon Raskie for his Jessica's Law off-grid offense as well as the consecutive 61-month prison sentence for his pre-Jessica's law offense, Raskie filed a pro se K.S.A. 60-1507 motion with the trial court. In his pro se K.S.A. 60-1507 motion, Raskie asserted that his trial counsel was ineffective "at the motion in limine hearing and should have objected to articles at trial to preserve [his] rights" He complained that at this hearing, his trial counsel was ineffective because he "had a medical issue [that] clouded his performance." At the same time, he broadly argued that his trial counsel was ineffective for "allow[ing] the prosecution to argue [about] 'grooming.'" Raskie also challenged his former appellate counsel's representation, arguing that she was ineffective for omitting Dr. Barnett's report from his resentencing record on appeal. Lastly, Raskie argued that the trial court made improper comments about the differences between rape, sodomy, and aggravated indecent liberties with a child at his resentencing.

Upon the filing of his pro se K.S.A. 60-1507 motion, the trial court appointed new counsel to represent Raskie. Thereafter, the State filed a motion to summarily deny Raskie's K.S.A. 60-1507 motion.

In its motion for summary denial, the State argued that Raskie's trial counsel provided effective representation at Raskie's motion in limine hearing and trial. It asserted that at the motion in limine hearing, Raskie's trial counsel correctly sought to prohibit the State from admitting evidence that Raskie bought C.R. lingerie, like corsets and thong panties, as gifts from Victoria's Secret because the State could imply that Raskie had sexual motivations for buying C.R. these items. But it further asserted that regardless of Raskie's trial counsel's adequate performance at the motion in limine hearing, the trial court correctly rejected Raskie's request to exclude the disputed gifts from evidence at his trial since the disputed gifts constituted highly probative evidence of Raskie's attempts to groom C.R. for sex. As for Raskie's contention that his trial counsel suffered from some unknown medical issue at the motion in limine hearing that affected his performance, the State noted that nothing in the motion in limine hearing transcript suggested that his trial counsel was ill. Also, the State generally argued that the trial court should summarily deny Raskie's complaints about his trial counsel's performance because they were vague and conclusory.

As for his former appellate counsel's failure to include Dr. Barnett's report in the resentencing record on appeal, the State noted that it did not have a copy of Dr. Barnett's report since it was a defense exhibit. Even so, the State argued that the trial court should reject Raskie's argument about his former appellate counsel's failure to include Dr. Barnett's report in his resentencing record on appeal because any error that his former appellate counsel made was harmless. In making this argument, the State emphasized that at his resentencing, the trial court denied Raskie's constitutional challenge to the imposition of a hard 25 life sentence for his Jessica's Law off-grid offense based on "the egregious nature of the crimes in this case." Given this, as well as the fact that we found that the trial court's findings under the three *Freeman* factors were supported by substantial competent evidence in Raskie's resentencing appeal, the State argued that his former appellate counsel's failure to include Dr. Barnett's report in the resentencing record on appeal was irrelevant.

Finally, concerning Raskie's complaint that the trial court made inappropriate comments about the differences between rape, sodomy, and aggravated indecent liberties with a child at his resentencing hearing, the State argued that Raskie could not validly challenge the trial court's comments under K.S.A. 60-1507. It asserted that if Raskie had any complaints about the trial court's comments, he should have raised those complaints in his resentencing appeal to us. Alternatively, the State asserted that the trial court could reject Raskie's contention that the trial court made improper comments at his resentencing hearing because the transcript of Raskie's resentencing hearing established that the trial court's comments were appropriate.

Eventually, the trial court held a nonevidentiary hearing on Raskie's pro se K.S.A. 60-1507 motion and the State's competing motion for summary denial. At this nonevidentiary hearing, Raskie argued that an evidentiary hearing on his claims about his trial counsel's performance was necessary because as of yet, there had not been a "fair evaluation by a court" on the adequacy of his trial counsel's representation. He additionally argued that had his former appellate counsel included Dr. Barnett's report in his resentencing record of appeal, we would have agreed with his contention that the trial court wrongly weighed the first *Freeman* factor against him. Also, although he now recognized that he could not directly challenge the trial court's resentencing comments about the differences between rape, sodomy, and aggravated indecent liberties with a child under K.S.A. 60-1507, through his newly appointed counsel, Raskie now asserted that his former appellate counsel was ineffective for not challenging the trial court's disputed comments to us in his resentencing appeal.

At the end of the nonevidentiary hearing, the trial court summarily denied Raskie's K.S.A. 60-1507 motion. Although not entirely clear, it seems that the trial court found any failure by his trial counsel to challenge the admission of the disputed grooming items was harmless because the probative value of the disputed grooming items necessitated their admission into evidence at his trial. The trial court rejected Raskie's contention that

15

his trial counsel suffered from some medical issue at his motion in limine hearing that clouded his performance because nothing within the motion in limine hearing transcript supported this contention. As for Raskie's former appellate counsel, the trial court concluded that his former appellate counsel's failure to include Dr. Barnett's report in his resentencing record on appeal was harmless because given the serious nature of his crime, we would not have reversed the trial court's denial of his constitutional challenge to the imposition of a hard 25 life sentence for his Jessica's Law off-grid offense under the three *Freeman* factors even if his former appellate counsel had included Dr. Barnett's report in his resentencing record on appeal. Finally, the trial court rejected Raskie's newest argument that his former appellate counsel was ineffective for not challenging the trial court's disputed resentencing hearing comments about rape, sodomy, and aggravated indecent liberties in his resentencing appeal. The trial court concluded that Raskie's former appellate counsel's failure to challenge the disputed comments was not a mistake because the former trial court's disputed comments had no bearing on the appropriateness of the sentence it ultimately imposed.

Raskie now timely appeals the summary denial of his K.S.A. 60-1507 motion.

ANALYSIS OF RASKIE'S APPEAL

In this appeal, Raskie argues that the trial court erred when it summarily denied his K.S.A. 60-1507 motion. He generally contends that through his pro se K.S.A. 60-1507 motion arguments and his counsel's arguments at the nonevidentiary hearing, he "alleged facts and conclusions that [were] not readily available in the record." He then asserts that because he alleged facts and conclusions that were not readily available in the record, "[a]n evidentiary hearing on each of [his ineffective assistance of counsel] claims was necessary" As a result, Raskie asks us to reverse the trial court's summary denial of his K.S.A. 60-1507 motion and remand to the trial court for an evidentiary hearing.

16

In its brief, the State counters that the trial court's summary denial of Raskie's K.S.A. 60-1507 motion was appropriate because the motions, records, and files of Raskie's case conclusively established that he was not entitled to relief. As it did before the trial court, the State argues that the trial court's summary denial of Raskie's K.S.A. 60-1507 motion was proper because Raskie's ineffective assistance of trial and appellate counsel claims are conclusory. The State also argues that even if we ignored the fact that Raskie's ineffective assistance of counsel claims are conclusory, the trial court's summary denial of Raskie's K.S.A. 60-1507 motion was correct because Raskie's underlying complaints about his trial and appellate counsels' performances are meritless or involve harmless error. Thus, the State asks us to affirm the trial court's summary denial of Raskie's K.S.A. 60-1507 motion.

*Applicable Law*

When seeking relief under K.S.A. 60-1507, a movant must prove that "'his or her K.S.A. 60-1507 motion warrants an evidentiary hearing.'" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). To establish that his or her K.S.A. 60-1507 motion warrants an evidentiary hearing, the movant "'must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" 300 Kan. at 881. This rule applies regardless of whether the movant is acting with counsel or pro se. That is to say, although we liberally construe pro se pleadings, a pro se K.S.A. 60-1507 movant "still bears the burden to allege facts sufficient to warrant a hearing on the motion, and mere conclusions of the . . . movant are not sufficient to raise a substantial issue of fact when no factual basis is alleged or appears from the record." *Mundy v. State*, 307 Kan. 280, Syl. ¶ 8, 408 P.3d 965 (2018).

Also, if a K.S.A. 60-1507 movant alleges that his or her counsel's representation was so deficient as to violate his or her right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, then that movant must also establish

(1) that counsel's performance was deficient under the totality of the circumstances and (2) that counsel's deficient performance prejudiced his or her case. *Sola-Morales*, 300 Kan. at 882. When a K.S.A. 60-1507 movant alleges ineffective assistance of counsel, that movant must establish that the outcome of his or her trial or appeal would have been different but for counsel's deficient performance. 300 Kan. at 882.

Here, because the trial court denied Raskie's K.S.A. 60-1507 motion based on the motions, files, and records of the case following a nonevidentiary hearing, we are in the same position as the trial court to consider the merits of Raskie's K.S.A. 60-1507 arguments. For this reason, we exercise de novo review. 300 Kan. at 881. And we note that under our de novo review, as long as we determine that the trial court's summary denial of Raskie's K.S.A. 60-1507 motion was the correct decision, we will affirm the trial court's summary denial of Raskie's motion even if the trial court used the wrong reasoning to support its decision. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (holding that appellate court will affirm trial court even if it relied on erroneous ground to support its decision if trial court made correct decision).

*Trial Counsel's Failure to Object to Grooming Items*

Both before the trial court and on appeal, Raskie's primary argument has involved his trial counsel's failure to object to grooming items that were introduced at his trial. In his pro se K.S.A. 60-1507 motion, Raskie's complaints about his trial counsel's failure to object to the grooming items are as follows: (1) that his trial counsel "was ineffective at the motion in limine hearing and should have objected at trial to preserve [his] rights"; (2) that his trial counsel "was incompetent in arguing the motion [in limine] and knowing so should have objected at trial"; and (3) that his trial counsel "was not performing well" at the motion in limine hearing because "[h]e had just had a medical issue[,] which clouded his performance." Now on appeal, Raskie continues to make similar arguments. For instance, he contends that his trial counsel provided deficient performance by "fail[ing] to

18

sufficiently raise and argue regarding [*sic*] the admissibility of evidence in a Motion in Limine and then [by] fail[ing] to preserve objections during trial." Also, he argues that he was entitled to an evidentiary hearing on this issue so he could "evaluate the prejudicial value of [the admission of] each of [the grooming] items as it compare[d] to the probative value of [the admission of] each of [the grooming] items to determine if [his] trial counsel's failure to object to these items" constituted ineffective assistance of counsel.

Yet, as asserted by the State in its brief, in making the preceding arguments, Raskie never "identif[ies] the specific errors related to the motion in limine," never "specif[ies] the points at trial where objections should have been made," and never "identif[ies] how he was prejudiced by these actions." Simply put, Raskie's complaints about his trial counsel's failures relating to the admission of the grooming evidence are so vague that we are unsure what Raskie believes that his trial counsel did wrong or how his trial counsel's alleged failings resulted in his two aggravated indecent liberties with a child convictions.

We stress that part of our difficulties in understanding Raskie's argument stems from his failure to identify the grooming evidence that he is complaining about. Neither before the trial court nor on appeal has Raskie outlined what grooming evidence he believes his trial counsel should have objected to. So, it is possible that Raskie believes that his trial counsel should have objected to all grooming items the State admitted at his trial. But we cannot deduce this from Raskie's vague complaint about his trial counsel's performance.

We also stress that in considering Raskie's contentions within his pro se K.S.A. 60-1507 motion, we have attempted to liberally construe them. See *Mundy*, 307 Kan. 280, Syl. ¶ 8 (holding that "[c]ourts liberally construe pro se pleadings"). Nonetheless, we note that the liberal construction of pro se pleadings rule "simply means that the substance of the pleading controls over its label." *In re Estate of Broderick*, 34 Kan. App.

19

2d 695, 701, 125 P.3d 564 (2005). Thus, we will not create an argument out of Raskie's vague complaint about his trial counsel not objecting to unidentified grooming evidence just because he initially filed his K.S.A. 60-1507 motion pro se.

In addition to being vague, Raskie's contention that his trial counsel provided prejudicially ineffective assistance of counsel by failing to object to the undefined grooming evidence is clearly conclusory. It is a bold assertion without any evidentiary support or explanation how his trial counsel erred by failing to object to the undefined or unparticularized grooming evidence.

In his brief, Raskie argues that he was entitled to an evidentiary hearing on this issue so he could evaluate the prejudicial versus probative value of each of the grooming items to determine if his trial counsel's failure to object to these items constituted ineffective assistance of counsel. But Raskie's argument ignores that he had to provide the trial court with an evidentiary basis to support his claim of ineffective assistance of trial counsel within his K.S.A. 60-1507 motion to be entitled to an evidentiary hearing. See *Sola-Morales*, 300 Kan. at 881 (holding that K.S.A. 60-1507 movant must state evidentiary basis to support his or her claims or evidentiary basis must appear in record to be entitled to evidentiary hearing on his or her motion). That is to say, Raskie's argument ignores that he needed to make more than a conclusory contention that his trial counsel prejudiced his defense by not objecting to the admission of the unidentified grooming evidence within his K.S.A. 60-1507 motion before the trial court was required to give him an evidentiary hearing on this claim.

In summary, because Raskie's complaint about his trial counsel's failure to object to the undefined or unparticularized grooming evidence is both vague and conclusory, we hold that the trial court's summary denial of Raskie's K.S.A. 60-1507 motion as it relates to his trial counsel's failure to object to this unidentified grooming evidence was appropriate.

20

*Trial Counsel's Alleged Medical Issue at the Motion in Limine Hearing*

In his pro se K.S.A. 60-1507 motion, Raskie argued that his trial counsel was ineffective at his motion in limine hearing because his trial counsel "had just had a medical issue[,] which clouded his performance." Outside of alleging that his trial counsel suffered from a medical issue, Raskie never explained to the trial court what type of medical issue his trial counsel was suffering from or how this medical issue clouded his performance. Now, on appeal, Raskie contends that the trial court erred when it rejected this argument without first holding an evidentiary hearing. He suggests that the trial court's sole basis for rejecting his argument was that his trial counsel died sometime after our Supreme Court confirmed his two aggravated indecent liberties with a child convictions and was thus unavailable to testify at any future evidentiary hearing.

But Raskie's appellate argument twists the trial court's reasoning for rejecting his contention that his trial counsel suffered from some medical issue at the motion in limine hearing that adversely affected his performance. The trial court did not reject Raskie's request for an evidentiary hearing on this claim simply because his trial counsel was deceased. Instead, it explained that it was rejecting Raskie's evidentiary hearing request because nothing within the motions, files, and records of his case supported his assertion that his trial counsel was ill at the motion in limine hearing. It noted that at the motion in limine hearing nobody said anything about his trial counsel being ill. And it noted that from its review of the motion in limine hearing transcript, his trial counsel had behaved appropriately at the motion in limine hearing. As a result, despite Raskie's suggestion otherwise, the trial court did not summarily deny his argument about his trial counsel suffering from a medical issue that clouded his performance at the motion in limine hearing simply because his trial counsel was deceased and thus unavailable to testify at any future evidentiary hearing.

More importantly, the trial court's reasoning for summarily denying Raskie's K.S.A. 60-1507 motion as to this claim was sound. After noting that nothing in the motion in limine hearing transcript addressed his trial counsel's health, the trial court told Raskie that it was denying his request for an evidentiary hearing on this issue because he had not provided the court with "sufficient . . . grounds" to support his claim that his trial counsel had some medical issue that adversely affected his performance at his motion in limine hearing. Thus, although the trial court did not explicitly state that Raskie's argument was conclusory, it effectively did so. Given that Raskie failed to even identify the alleged medical issue that his trial counsel was suffering from, let alone explain how his trial counsel's performance was clouded by this unknown medical issue at his motion in limine hearing, we agree with the trial court's ruling that Raskie was not entitled to an evidentiary hearing on this conclusory claim.

Notwithstanding the preceding, we also affirm the trial court's summary denial of this argument because we are convinced from the record on appeal that Raskie's trial counsel was not suffering from any medical issue that adversely affected his representation of Raskie at the motion in limine hearing. In addition to the trial court's finding about nothing within the motion in limine hearing transcript directly addressing Raskie's trial counsel's health, we base our conclusion on the fact that his trial counsel's arguments at the motion in limine hearing were consistent with the arguments that he made nearly two months earlier within the written motion in limine that he filed on Raskie's behalf. And we also consider the fact that at the end of the motion in limine hearing, his trial counsel told the trial court that he intended to try a month-long federal mortgage fraud case with four codefendants in just over a week. In short, we find that his trial counsel's readiness to try a month-long federal mortgage fraud case a little over a week after Raskie's motion in limine hearing indicates that his trial counsel was not suffering from some medical issue that adversely affected his representation of Raskie at the motion in limine hearing.

*Appellate Counsel's Failure to Include Dr. Barnett's Report in the Record on Appeal*

In his pro se K.S.A. 60-1507 motion, Raskie made the following assertion: "My appellate attorney failed to have Dr. Barnett's report made part of the record on appeal of my reimposed Jessica['s] Law sentence." Later on, Raskie's appointed counsel filed a memorandum supplementing Raskie's pro se arguments regarding appellate counsel's failure to include Dr. Barnett's report in the resentencing record on appeal. In this memorandum, Raskie alleged that Dr. Barnett's report stated that he was a low degree of danger to society because he was "a psychologically intact individual who display[ed] no signs o[r] symptoms of any major mental disease or defect such as psychosis, major depression, organic brain dysfunction, personality disorder, etc." In this memorandum, Raskie also clearly asserted that his former appellate counsel's failure to include Dr. Barnett's report in the resentencing record on appeal prevented us from adequately analyzing his argument that the trial court misapplied the first *Freeman* factor when considering his constitutional challenge to the trial court's reimposition of a hard 25 life sentence upon him at his resentencing. Upon Raskie's request at the nonevidentiary hearing, the trial court rejected Raskie's request for an evidentiary hearing after admitting Dr. Barnett's report into evidence. Once more, the trial court denied Raskie's evidentiary hearing request because it concluded that given the serious nature of his crime, we would not have reversed the trial court's denial of his constitutional challenge to his hard 25 life sentence for his Jessica's Law off-grid offense even if his former appellate counsel had included Dr. Barnett's report in his resentencing record on appeal.

On appeal, Raskie continues to argue that his former appellate counsel provided deficient performance by failing to include Dr. Barnett's report in the resentencing record on appeal. He contends that if we had Dr. Barnett's report when evaluating his constitutional challenge to his hard 25 life sentence under the first *Freeman* factor in his resentencing appeal, then the panel that considered his resentencing appeal "may have concluded that [his] sentence was inappropriate."

Nevertheless, Raskie's current appellate counsel has also failed to include Dr. Barnett's report in the record on appeal. Thus, like the previous panel, we are in a worse position than the trial court, which had access to Dr. Barnett's report, to evaluate whether Raskie's constitutional complaint has merit. And for this same reason, we are in a worse position than the trial court to evaluate whether former appellate counsel's failure to include Dr. Barnett's report in his resentencing record on appeal affected our decision to affirm the trial court's first *Freeman* factor analysis. To sum up, because Raskie carries the burden of designating a record that supports his claims of prejudicial error, Raskie's failure to include Dr. Barnett's report in this record on appeal is fatal to his argument that he was entitled to an evidentiary hearing before the trial court on his complaint about his former appellate counsel's failure to include Dr. Barnett's report in his resentencing record on appeal. See *State v. Simmons*, 307 Kan. 38, 43, 405 P.3d 1190 (2017) (holding that without adequate record this court presumes that trial court's disputed decision was proper).

Even if we ignored this obvious problem with Raskie's current record on appeal, we would still affirm the trial court's rejection of Raskie's complaint about his former appellate counsel's failure to include Dr. Barnett's report in his resentencing record on appeal.

As stressed by the State in its brief, it is undisputed that although the resentencing trial court gave Dr. Barnett's report little weight when considering Raskie's constitutional challenge to the imposition of a hard 25 life sentence upon him for his Jessica's Law off-grid offense under the first *Freeman* factor, it did consider Dr. Barnett's report before denying his constitutional challenge. In fact, in considering the first *Freeman* factor, the trial court told Raskie that it was giving Dr. Barnett's report so little weight because Dr. Barnett's good opinions of him did "not override the terrible wrongs that [he had] done in this case" to C.R. Also, the resentencing trial court told Raskie that his conduct, including the trauma that he had inflicted upon C.R., supported the imposition of the maximum

legal sentence upon him for his Jessica's Law off-grid offense. Then, when we considered Raskie's constitutional challenge to the trial court's imposition of a hard 25 life sentence upon him for his Jessica's Law off-grid offense, we held that substantial competent evidence supported the trial court's finding against Raskie under the first *Freeman* factor given Raskie's specific egregious criminal conduct. *Raskie II*, 2013 WL 5737355, at *5. We then mentioned Dr. Barnett's report in addressing the trial court's first *Freeman* factor analysis to note that it would not question the trial court's decision to give Dr. Barnett's report so little weight under the first *Freeman* factor since it was not included in his resentencing record on appeal. 2013 WL 5737355, at *5.

In summary, it is readily apparent that the trial court contrasted Dr. Barnett's opinion that Raskie presented a low degree of danger to society against "the terrible wrongs that [Raskie had] done in this case" to C.R. As a result, the trial court gave little weight to Dr. Barnett's report. Indeed, the trial court determined that Raskie's specific criminal conduct showed that he posed a high degree of danger to society.

Thus, Raskie's former appellate counsel's failure to include Dr. Barnett's report in his resentencing record on appeal had no bearing on the first *Freeman* factor based on the trial court's previous determination. So, we affirm the trial court's summary denial of Raskie's K.S.A. 60-1507 motion about his claim that his former appellate counsel's failure to include Dr. Barnett's report in his resentencing record on appeal constituted prejudicially deficient performance.

*Appellate Counsel's Failure to Challenge the Trial Court's Disputed Comments at Resentencing*

To review, in his pro se K.S.A. 60-1507 motion, Raskie broadly complained that the trial court made inappropriate comments about the differences between rape, sodomy, and aggravated indecent liberties with a child at his resentencing hearing. In fact, his

precise complaint in his pro se K.S.A. 60-1507 motion about the trial court's comments at his resentencing hearing was as follows: "Judge [Franklin] Davis went on to make a speech that as far as he thought that things would be this way in the future. Jessica['s] Law does not differentiate between rape or sodomy and indecent liberties." Then, at the non-evidentiary hearing on his K.S.A. 60-1507 motion, Raskie's newly appointed counsel clarified that Raskie meant to argue that his former appellate counsel was ineffective for not challenging the preceding comments in his resentencing appeal to us.

On appeal, though, it seems that Raskie's complaint has echoed back to his original pro se argument. In his appellant's brief, Raskie merely asserts that "the resentencing judge made improper comments regarding distinctions in conduct [between] rape versus lewd fondling or touching" without reference to his former appellate counsel's failure to challenge these allegedly improper comments in his resentencing appeal. But as argued by the State below, Raskie cannot use his K.S.A. 60-1507 motion to directly challenge the trial court's comments at his resentencing hearing. This is because if he wanted to directly challenge the trial court's comments, he needed to do so in his resentencing appeal to us. It is a well-known rule that "only under rare conditions will a trial court be required to entertain arguments on a matter that could have been raised on direct appeal." *Toney v. State*, 39 Kan. App. 2d 944, 948, 187 P.3d 122 (2008).

Thus, contrary to Raskie's current argument otherwise, the trial court had no duty to grant him an evidentiary hearing where he could have directly challenged the trial court's disputed comments at his resentencing hearing. Also, because Raskie's current appellate counsel has failed to argue that Raskie's former appellate counsel was ineffective for not challenging these disputed comments in his resentencing appeal to us, Raskie's current appellant counsel has abandoned the only proper argument Raskie has ever made under his K.S.A. 60-1507 motion regarding the trial court's disputed comments. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (holding that issue not briefed on appeal is deemed waived and abandoned).

26

We further note that even if Raskie had properly briefed his argument about his former appellate counsel failing to challenge the trial court's disputed comments in his resentencing appeal to us, we would still reject his argument as conclusory. As emphasized by the State in its brief, neither before the trial court nor on appeal has Raskie identified the specific comments by the trial court at his resentencing hearing that he believed were improper. Also, Raskie has never explained how the unidentified disputed comments prejudiced him or rendered his hard 25 life sentence for his Jessica's Law off-grid offense illegal. Yet, as explained at length already, Raskie needed to give the trial court an evidentiary basis to support the ineffective assistance of counsel claims before he was entitled to an evidentiary hearing on those claims See *Sola-Morales*, 300 Kan. at 881. So, we hold that irrespective of the other problems with Raskie's argument that his former appellate counsel was ineffective for not challenging the resentencing court's unidentified disputed comments to us in his resentencing appeal, the trial court correctly rejected Raskie's request for an evidentiary hearing on this argument because it is conclusory.

Affirmed.